## William L. Bradley *vs.* James Norton.

The exclusive right to a trade-mark is a species of property recognized by law.
The imitation of a trade-mark, which will constitute an infringement of this right, need not be a precise copy of the original; if there is a substantial similarity, so that the community would be likely to be deceived, it is sufficient.

Where it appears that the party infringing intends to continue the wrong, an injunction against such continuance is the sole adequate remedy.

Where *R*, the manufacturer of goods wrongfully stamped with the trade-mark of the petitioner, conducted the business through an agent, who with his own knowledge and consent was held up by *R* to the public as the proprietor, and so far as the public could reasonably judge from all that appeared was the proprietor,— Held, that an injunction against the further use of the trade-mark by this apparent proprietor should be granted upon a petition brought for that purpose to which *R* was not made a party.

It is unnecessary in a petition for an injunction brought by one who has the legal title to a trade-mark and is apparently the sole proprietor of the business in which it is used, to join as a party a silent partner in the business, whose existence is unknown to the public.

A general assignment in insolvency is inoperative in respect to passing a right to a trade-mark, if the right was not inventoried by the trustee or appraisers, and never claimed by the trustee or creditors of the insolvent, nor in any manner disposed of under the assignment.

BILL in equity, alleging that the respondent had used and still continued to use a trade-mark belonging to the petitioner, and praying that he might be enjoined against its further use either in selling goods already so stamped by him, or in stamping with it packages thereafter put up for sale. The respondent filed a general denial, and the question as to what decree should be passed was reserved for the advice of this court upon a special finding by the superior court embracing the following facts.

Andrew Coe of Middlefield, then a parish in Middletown, in 1851, after several years of experiment, invented a combination of materials which constituted a valuable fertilizer for agricultural uses. He commenced to manufacture this article at once in considerable quantities, selling it under the name of superphosphate of lime, and it soon became widely circulated and extensively known to the public by the distinctive name of Coe's Superphosphate of Lime, and by that name alone was advertised and sold. Until December, 1854, he continued the manufacture and sale of this fertilizer, but then became insolvent and made an assignment of his property for the benefit of his creditors. In this assignment the trade-mark in question was not embraced, unless it would legally pass by virtue of the general language of the assignment con-

veying all the debtor's property. It was not inventoried by the trustee or the appraisers, and never claimed by the trustee or the creditors, nor in any manner disposed of under the assignment. In 1855 Andrew Coe removed to Roxbury, Massachusetts, and there in a co-partnership under the name of Coe & Co., with Russell Coe and Elmore F. Coe, resumed the manufacture of his fertilizer, having given to this firm license to use the name and mark of " Coe's Superphosphate of Lime." In April, 1862, this co-partnership was dissolved and the business permanently suspended, but up to that date the manufacture of the article was prosecuted extensively, the packages when put up for the market being stamped " Coe's Superphosphate of Lime, Boston, Mass.," or " Coe's improved No. 1, Superphosphate of Lime, Boston, Mass.," or by other similar marks indicating their particular quality. After the insolvency of Andrew Coe in 1854, the manufacture of his fertilizer was carried on at the same factory where he had been conducting the business, in Middletown, first by E. J. Coe and J. Miller, then by A. B. Coe, and then by Russell Coe and Elmore F. Coe, who continued its manufacture from 1858 to April, 1862, under the name of Coe & Co. These parties stamped the packages put up by them for the market with the mark, " Superphosphate of Lime," together with their names and that of the place of manufacture, with slight variations of phraseology. Since April, 1862, when Coe & Co. suspended business at Middletown, the manufacture of superphosphate of lime has been carried on at the same place in such a manner as not fully to disclose to the public the real proprietor of the business. Russell Coe sometimes signed bills and receipts and performed other acts connected with the business, ostensibly as the agent of the respondent, and in that way, with the knowledge and consent of the respondent, held him up to the public as the proprietor. The respondent superintended the business in all points, and so far as the public could reasonably judge from the manner in which the business was conducted was the proprietor, but in fact was only employed by Russell Coe as his overseer and foreman, Coe being the real proprietor. The article thus manufactured

at Middletown, since April 1862, was sent to market under the name and mark of " Coe's Superphosphate of Lime, Middlefield, Conn., patented April 1, 1862," to which upon some packages was added, " manufactured by Russell & Co." Other packages were also marked, " Coe's superior Superphosphate of Lime, manufactured by R. Coe, Middlefield, Conn."

By a written contract dated November 7th, 1861, Andrew Coe, acting both for himself and for the firm of Coe & Co. of Roxbury, licensed the petitioner for a valuable consideration to manufacture and sell the fertilizer in question, using the trade-mark of " Coe's Superphosphate of Lime." The petitioner erected a factory at Roxbury for the manufacture of the article, and has produced it from January 1st, 1862, to the date of the petition in large quantities, advertising and selling it under the distinctive name of " Coe's Superphosphate of Lime," its composition being the same with some improvements as that of the fertilizer discovered by Andrew Coe. The exclusive right to use this trade-mark for seven years, with a reservation only in favor of Coe & Co. of Roxbury, so long as they continued solvent and in their present course of business, was conveyed to the petitioner by Andrew Coe, by his contract, made upon a valuable consideration, on February 13th, 1862 ; and upon May 2d, 1862, Russell Coe and Elmore J. Coe executed an instrument made upon like consideration, ratifying and confirming this conveyance.

A patent was obtained for the fertilizer in question, April 1st, 1862, of which the petitioner is the assignee and owner. He holds the legal title to the factory and other property in use in his manufacturing business, which is carried on exclusively in his own name, but he has in fact a silent partner whose existence is not known to the public.

*Doolittle* and *Wright*, for the petitioner.

1. The petitioner has no adequate remedy at law. Injunctions will be issued for the prevention of great and irreparable mischief, and in this case the injury of a business so extensive in its character and to build up and establish which so

Bradley *v.* Norton.

much time and money has been expended, can not be otherwise than great, and the piracy of a distinctive trade-mark which alone gives value to that business can not be otherwise than irreparable. *Whittlesey* v. *Hartford, Providence & Fishkill R. R. Co.*, 23 Conn., 433 ; *New London Bank* v. *Lee*, 11 id., 121 ; *Chipman* v. *City of Hartford*, 21 id., 498 ; *Gillot* v. *Kettle*, 3 Duer, 626. The injury is both past and prospective, and can not therefore be accurately and definitely estimated. And equity will also intervene to prevent repeated suits at law.

2. The claim that there is adequate remedy at law creates a question of jurisdiction, and can be raised only upon demurrer or answer to the bill. *Chipman* v. *City of Hartford*, supra ; *Bunnell* v. *Read*, 21 Conn., 592.

3. The power of the court to restrain by injunction has been long settled. 2 Swift's Dig., 143 ; *Taylor* v. *Carpenter*, 3 Story, 459, 463 ; *S. C.*, 2 Sandf. Ch., 612.

4. It was unnecessary to join the silent partner of the petitioner in the bill. The latter has the sole legal title and is alone bound to protect it. *Townsend* v. *Auger*, 3 Conn., 554. But after trial upon a general denial of the allegations in the bill or answer thereto, the court will not dismiss the bill for want of additional parties. *New London Bank* v. *Lee*, and cases cited, *supra*.

5. It is unnecessary to aver in the bill that the respondent *threatens* to continue to violate the petitioner's rights. It is enough that he is actually engaged in violating them. What is being done and continued is more to be dreaded than what is threatened.

6. The trade-mark did not pass by the general assignment in insolvency. *Osborne* v. *Fuller*, 14 Conn., 529 ; *Strong* v. *Carrier*, 17 id., 319 ; *Peck* v. *Whiting*, 21 id., 206 ; *Dibble* v. *Morris*, 26 id., 416. But if it did so pass it was treated as abandoned and Coe acquired a new title by use. Upton on Trade-marks, 199.

7. The respondent is estopped by his conduct from objecting that he is not the proprietor of the works and the offending party, but even if he be considered here as merely the

agent of Russell Coe, the relief asked for is proper, and he can suffer no injury from an injunction, since one against Coe issued in the customary form would run against his agents also. *Coats* v. *Holbrook*, 2 Sandf. Ch., 612 ; 2 Robb's Patent Cases, 302, 499.

8. A trade-mark is the subject of sale and assignment, and will be protected in the hands of a purchaser, unless the name used is intended to deceive the public. *Coats* v. *Holbrook*, supra ; *Walton* v. *Crowly*, 3 Blatch., 440 ; *Hobbs* v. *Francais*, 19 How. Pr. R., 571 ; *Stewart* v. *Smithson*, 1 Hilton, 121. Here the extent of the petitioner's business, and the increasing reputation and value of the product, show that the public have not been deceived but greatly benefited.

9. The marks used by the respondent constitute an infringement of the petitioner's rights. *Partridge* v. *Menck*, 1 How. Appeal Cases, 559 ; *S. C.*, 2 Sandf. Ch., 625 ; *Coffeen* v. *Brunton*, 4 McLean, 519 ; *Davis* v. *Kendall*, 2 R. Isl., 569 ; *Peterson* v. *Humphrey*, 4 Abbott Pr. R. 395.

*Warner*, for the respondent.

1. The bill discloses no grounds for an injunction. The alleged grievances are to no extent prospective, and the facts found by the court relate entirely to past transactions. The injury supposed is simply a revocation of a license, or at the utmost a breach of contract, and in either case is a consummated injury for which the law gives an adequate remedy. Nor is there any statement of facts or prayer for a disclosure or any other relief in the bill, which, as in some cases, would primarily give the court jurisdiction.

2. The bill is defective because the silent partner in the petitioner's business was not made a party. The claim is that this business has been injuriously affected by the simulation of a trade-mark used in conducting it, but if so all parties having a direct interest in the profits and losses of that business have a direct interest in this suit and should be parties to it.

3. The bill is defective because the wrong party was made respondent. Russell Coe is the party who has infringed upon

this right of the petitioner, if any exists. The respondent was simply his superintendent, and without interest in the business. Clerks and agents are sometimes made parties for some special purpose, but are then only *quasi* and not principal respondents, nor does the decree ever run against them.

4. Any person could lawfully use the distinctive name of " *Coe's Superphosphate of Lime*." A manufacturer selling his products under his own name does not thereby acquire an exclusive right to that name in the absence of a patent securing it. *Burgess* v. *Burgess*, 17 Eng. L. & Eq., 257; *Thompson* v. *Winchester*, 19 Pick., 214; *Wolf* v. *Goulard*, 18 How. Pr. R., 64.

5. This " distinctive name " is not a trade-mark. The words have never been continuously appropriated as such by any one person or firm. They were not used to indicate " the origin or ownership of the property or place of its manufacture." These were indicated upon the packages by other words and inscriptions, to which the petitioner claims no title. These words served only to designate the name or quality of the article contained in the package. *Stokes* v. *Landgraff*, 17 Barb., 608; 2 Hilliard on Torts, 209.

6. The finding discloses no equity. This application is to create a monopoly by means of a falsehood. The privilege of deceiving the public even for their own benefit is not a legitimate subject of commerce. The petitioner wishes to impose on the community the product of his own manufacture for that of another's. *Partridge* v. *Menck*, 1 How. Appeal Cases, 560.

7. The contracts under which the petitioner claims to hold this " trade-mark " are void. They are in restraint of trade, and they also contravene public policy by creating a monopoly.

8. The petitioner's right as against Russell Coe depends on the license of the latter. But such a license gives a mere power, and a power not coupled with an interest, which is therefore revocable at will.

9. In this class of cases it has been uniformly ruled that the essence of the wrong consists " in the sale of the goods of one

manufacturer as those of another." A comparison of the marks used, as found by the court, will show that no such deception was here attempted.

McCurdy, J. The principal questions on the merits are— 1st. Has the petitioner an exclusive right to make and vend the article called " Coe's Superphosphate of Lime," under that description as a trade-mark ?—2d. Has that right been violated?—and 3d. Is this application the appropriate remedy for an injury ?

1. That this species of property—the exclusive right to a trade-mark—exists and is recognized by law, is beyond question. 2 Swift's Dig., Rev. Ed., 157. It appears from the finding that Andrew Coe, after some years of experiment and effort in combining certain materials, had succeeded in inventing or discovering a valuable fertilizer, which became widely known and sold in market and extensively used by the public under the distinctive name before mentioned.

In all countries the agricultural interest is of the greatest importance and any improvement in the mode or amount of production must be of the highest value. It is perfectly right therefore that a discovery or invention which conduces to such improvement should be encouraged and allowed to become a source of emolument.

It is very obvious that Andrew Coe used the terms in question not merely as indicating a manufactured article, but to assert a right of property in the mode of making it. Such was the understanding of the parties ; and without tracing the conveyances minutely, it is sufficient to say that, before the bringing of this petition, the exclusive title for at least seven years from the 13th day of February, 1862, had become vested in the petitioner. In the agreement of that date it is said that Andrew Coe for many years has been the sole and exclusive owner, with an immaterial exception, of a certain trade-mark, viz., " Coe's Superphosphate of Lime," which has become valuable &c. This agreement was ratified and confirmed by Russell Coe and Elmore F. Coe, May 2, 1862, by an instrument in which it was stipulated that the petitioner should pay

to them a certain portion of the profits of the business. Russell Coe then can not be permitted to deny that the article is the proper subject of a trade-mark, and that the right to use it is valuable, and is the property of the petitioner. The respondent, from his business relations with Russell Coe, and especially if, as he claims, he is his mere agent, is embraced in the same restriction.

2. It is well settled that the imitation of a trade-mark to render a party liable need not be a precise copy. If there is a substantial similarity, so that the community would be likely to be deceived, it is a sufficient infringement of the right. Law's Dig., 374, 5, and the cases there cited.

Now, without repeating the different forms of words set forth in the finding of the court, it is evident that the variations between the descriptive terms used by Russell Coe and the respondent and those which constitute the petitioner's trade-mark, are very slight and little calculated to attract attention. The article manufactured by them must have been understood to be " Coe's Superphosphate of Lime." It was so intended by them. Hence the false stamping of the article as " patented April 1st, 1862," and the concealment of the true position of the parties in transacting the business.

3. An injunction is the sole adequate remedy. In an action at law it would be impossible to trace the extent or ascertain the amount of the mischief. The spurious article might by its cheapness supersede the true one, or by its inferiority destroy its character and drive it from the market.

4. The parties are right. From the mode of conducting business adopted by Russell Coe and the respondent, either may be considered as a principal for the purpose of this case.

The petitioner had the sole interest in the trade-mark, and was justified in instituting legal proceedings in his own name to protect his property. Courts of equity often require new parties to be joined for fear that injustice may be done, or that the decision may not be final. These reasons do not exist in this case.

5. The assignment was incomplete and inoperative in relation to this right, and the respondent can not be permitted to

set it up to screen himself from the consequences of his illegal proceedings.

6. The acts of the respondent were sufficient evidence of his intention to continue the wrong without averring or proving threats.

We advise that the injunction be made perpetual.

In this opinion the other judges concurred.

---

# SUPREME COURT OF ERRORS.

## TOLLAND COUNTY, NOVEMBER TERM, 1865.

### Present,

HINMAN, C. J., DUTTON, BUTLER AND MCCURDY, JS.