THE STATE OF MISSOURI, Plaintiff in Error, *vs.* JOHN S. GIBBS, Defendant in Error.

1. *Trade marks—Act of 1870—Meant to protect foreign as well as domestic trade marks.*—The act to protect merchants, etc., against counterfeit trade marks approved February 22nd 1870, (Adj. Sess. Acts 1870,) was designed to protect foreign as well as domestic trade marks, and may be invoked by citizens of other States and countries.

*Error to St. Louis Court of Criminal Correction.*

*Vastine & Nicholson,* for Plaintiff in Error.

WAGNER, Judge, delivered the opinion of the court.

This was a proceeding commenced in the Court of Criminal Correction, under the provisions of the law in reference to trade marks.

The affidavit charged that Lea & Perrin were co-partners, and that the firm had for many years past been manufacturers and dealers in a sauce known and called Lea & Perrin's Worcestershire sauce, and that in the use and sale of said sauce, said firm usually affixed and used a label and wrapper, a sample of which was appended. The affidavit then alleges that on a certain day the defendant unlawfully did have in his possession a certain brand, and printed label wrapper representation and imitation of the said label and wrapper of the firm of Lea·& Perrin, for the purpose of using the same upon and in connection with a certain article made, manufactured, prepared and compounded by said defendant, or his servants and agents, or person or persons, other than the said firm of Lea & Perrin, and passing the same off upon the community as the original wares, goods and compounds of the firm of Lea & Perrin, and that the firm of Lea & Perrin did business in the City of London, England, and had no place of business in the county of St. Louis.

The affidavit further charged that the defendant kept for sale a certain article of merchandise and preparation upon which, and in connection with which, were certain forged, counterfeit and imitation labels, brands and wrappers placed, affixed and used, which were intended to represent the said

merchandise and preparation as the genuine goods, merchandise and preparation of certain other parties, to-wit: the firm of Lea & Perrin, etc.

To this information the defendant filed his motion to dismiss: 1. Because the complaint did not charge upon the defendant the violation of any statute known to the laws of the State of Missouri; 2. Because the law under which the defendant was prosecuted was not intended to, nor did it, protect merchants or manufacturers doing business in any other place than in the State of Missouri; and, 3. Because the law on which the complaint was based, was for the protection of merchants and manufacturers doing business in this State.

This motion was by the court sustained, and the State sued out its writ of error.

The determination of the case must be governed by construing the act to protect merchants and manufacturers against counterfeit trade marks, approved February 22, 1870, (Adj. Sess. Acts 1870, p. 72; Wagn. Stat., [1872,] 1330).

The first section affixes a penalty for forging or counterfeiting trade marks, and provides that any person or persons who shall knowingly and wilfully make, forge or counterfeit any representation, likeness, similitude, copy or imitation of the private label, brand, stamp, wrapper, engraving, mould or trade mark usually affixed by any manufacturer, mechanic, merchant, tradesman, druggist, person or body politic or corporate, to upon or used in connection with the goods, wares, merchandise, compound or preparation of such manufacturer, mechanic, merchant, tradesman, druggist, person or body corporate or politic, with intent to pass off any goods, wares or merchandise, compound or preparation to which said forged counterfeit representation, likeness, similitude, copy or imitation is affixed, or in connection with which the same may be used or intended to be so affixed or used, as the work, goods, wares, implements, merchandise, compound or prepartion of such manufacturer, mechanic, merchant, druggist, tradesman, person or body corporate or politic, shall upon conviction thereof, be deemed guilty of a misdemeanor, and shall be punished by imprison-

ment in the county jail for a period not less than three months nor more than twelve months, or fined not less than $500 nor more than $5,000, or both.

The second section affixes a penalty for fraudulently keeping such counterfeit trade-marks on hand, and declares that any person or persons who shall, with intent to defraud, have in his or her possession any die or dies, plate or plates, brand or brands, engraving or engravings, printed labels, stamps, imprints, moulds, wrappers, or trade mark, or any representation, likeness, similitude, copy or imitation of the private label, brand, stamp, wrapper, etc., usually affixed by any manufacturer, etc., shall upon conviction thereof be punished as in the preceding section.

The third section imposes and prescribes a penalty for keeping for sale any article or articles to which counterfeit trades marks are affixed, and the fifth section gives all courts in this State, having criminal jurisdiction, power to try cases for violations of this act.

A reading of the act shows that it is comprehensive and general in its character. There is not a word or an intimation given that it was intended to apply only to citizens of this State. Indeed, to give it such a construction would, I apprehend, defeat its principal object and expose our people to all the impositions and deceptions against which the law was intended to guard them. There is a well known right of property in a trade mark, which the law will protect, and which it was not the intention of the statute to abridge. The citizens of foreign States will be protected in their rights of property in trade marks in our courts, the same as our own citizens. (Taylor vs. Carpenter, 11 Paige, 229; S. C., 2 W. & M., 1.)

But aside from this, the statute had another important purpose in view, which was intended directly to benefit our own citizens, and shield them against counterfeiters and impostors. Many articles manufactured by certain persons, firms and corporations, have attained high reputation, and are of great excellence, and those articles are sold with peculiar marks, brands

or wrappers, or other devices, which have been adopted to show by whom they were made. These trade marks are valuable to the persons who have a proprietary interest in them and to the people who buy and use the articles, because they are a guarantee of their genuineness. But if by fraudulent means other parties are permitted to counterfeit and forge and simulate these trade marks, and attach them to inferior or different articles, the community is imposed on and cheated. It was to prevent this that the law was enacted. And in its provisions it makes no distinction as to where the original manufacturer resides. It applies to all alike, and was designed to protect our people against gross deception and imposition, regardless of the place where the genuine articles were made.

For these reasons the judgment should be reversed and the case remanded. All the judges concur, except Judge Sherwood, who is absent