THE PEOPLE OF THE STATE OF NEW YORK, RESPOND-
ENT, v. GEORGE T. FISHER, APPELLANT.

*Counterfeiting a trade-mark designed by a voluntary trade union association, which
neither carried on business nor owned the products to which the trade-mark label
was attached.*

A label was designed by the "Cigar Makers' International Union of America," in
1880, pursuant to a provision of the constitution of the union, which was
attached to all goods manufactured in the various establishments in which
members of the union were employed. The purpose of the label was to furnish
a trade-mark to indicate that the cigars contained in boxes to which it was
affixed were made solely by the members of the association and to distinguish
them from all other cigars in the market. The union was a voluntary associa-
tion of individuals, said to number 25,000; it was not engaged in the business of
manufacturing cigars, and as an association had no property in that business.
*Held,* that the members of the organization might lawfully devise, as they had
done, a trade-mark label to designate the products of their labor, and that such
trade-mark was entitled to protection in its relation to such products.
That the fact that their work was not performed under a single employment, but
under many different employers in as many widely separated shops, went rather
to the value of the trade-mark, in its application to the cigars made by them,
than to the right to its protection.
That a person counterfeiting and imitating such trade-mark, and affixing the same
to an article of merchandise, not the product of the labor of members of the
union, was properly convicted of the offense of counterfeiting and imitating
a trade-mark.

APPEAL from a judgment of the Court of Sessions of Erie county,
of September 22, 1888, affirming a judgment of the Police Court of
the city of Buffalo, convicting the defendant of the offense of
counterfeiting and imitating a trade-mark, and affixing the same
to an article of merchandise in violation of the statute.

This trade-mark was devised by the "Cigar Makers' International
Union of America" in the year 1880. It was known as the blue
label, and used as such upon boxes containing cigars made by the
members of the union, and read as follows:

"ISSUED BY AUTHORITY OF THE CIGAR MAKERS' INTERNATIONAL
UNION OF AMERICA.

"UNION MADE CIGARS.

"THIS CERTIFIES that the cigars contained in this box have been
made by a first-class workman, a member of the Cigar Makers'

International Union of America, an organization opposed to inferior rat-shop, coolie, prison, or filthy tenement-house workmanship. Therefore we recommend these cigars to all smokers throughout the world. All infringements upon this label will be punished according to law.

"A. STRASSER.

"*President C. M. I. U. of America.*"

The counterfeit stamp was, by the defendant, affixed to a box of cigars sold by him.

*Daniel W. Allen,* for the appellant.

*Tracy C. Becker,* for the respondent.

BRADLEY, J.:

The counterfeit closely imitated the genuine stamp of the union, and, although distinguishable upon close inspection, it was likely to be taken for the genuine and to mislead and deceive the public. The question presented is whether the charge, as made and proved, constituted an offense within the statute, which provides that "a person who knowingly in a case where provision for the punishment of the offense is not otherwise specially made by statute (1) falsely makes or counterfeits a trade-mark, or (2) affixes to any article of merchandise a false or counterfeit trade-mark, knowing the same to be false or counterfeit, or the genuine trade-mark or an imitation of the trade-mark of another, without the latter's consent; or (3) sells or keeps, or offers for sale, an article of merchandise to which is affixed a false or counterfeit trade-mark, or the genuine trade-mark, or an imitation of the trade-mark of another, without the latter's consent; or (4) has in his possession a counterfeit trade-mark, knowing it to be counterfeit, or a die, plate, brand, or other thing, for the purpose of falsely making or counterfeiting a trade-mark; or (5) makes or sells, or offers to sell or dispose of, or has in his possession with intent to sell or dispose of an article of merchandise with such a trade-mark as to appear to indicate the quantity, quality or character of the article, but not indicating it truly, is guilty of a misdemeanor." (Penal Code, § 364.) The genuine label was designed as a trade-mark for the "Cigar Makers' International Union of America,"

and has been so used since 1880, when it was devised and adopted for that purpose pursuant to a provision of the constitution of the union. The important inquiry is whether, in its application and use, this label has the character of a trade-mark, and its use as such is entitled to protection. As defined by the statute a trade-mark "is a mark used to indicate the maker, owner or seller of an article of merchandise; and includes, among other things, any name of a person or corporation, or any letter, word, device, emblem, figure, seal, stamp, diagram, brand, wrapper, ticket, stopper, label or other mark lawfully adopted by him and usually affixed to an article of merchandise to denote that the same was imported, manufactured, produced, sold, compounded, bottled, packed or otherwise prepared by him," etc. (id., § 366); and an imitation of a trade-mark "is that which so far resembles a genuine trade-mark as to be likely to induce the belief that it is genuine, whether by the use of words or letters, similar in appearance or in sound, or by any sign, device or other means, whatsoever." (Id., § 368.) This is substantially the rule at common law relating to infringements of trade-marks; but it is contended on the part of the defendant that the label cannot be treated as a trade-mark in the legal sense of the term, because it has not the support and proprietary right in its relation to the merchandise upon which it is affixed, in respect either to the workmanship or ownership of such merchandise; and neither the maker, owner or seller is indicated by the label. The Cigar Makers' International Union of America is a voluntary association of individuals said to number 25,000; they are cigar makers. The association is not engaged in the business of manufacturing cigars; and, as such, has no property in the business. It has a constitution expressing the purpose of the organization, which seems to have in view the mutual benefits of its members. Within the system so provided for it are the selection of officers, the regulations for the admission of members, etc. The membership is confined to those engaged in the cigar industry, and the organization consists of local unions under the jurisdiction of the international union. The trade-mark label is issued by its authority, and is furnished by the several local unions, in the manner prescribed to all union shops within their respective districts. A union shop is one in which none but members of the association are engaged as workmen. They may also be

used by a person who is a member and solely performs the work of manufacturing cigars on his own account, and the labels used have the stamp of the respective local unions through which they are furnished. The purpose of this label was to furnish a trade-mark to indicate that the cigars contained in boxes on which it is affixed, were made solely by the members of the association, and to distinguish them from all other cigars in the market. It is, therefore, confined to cigars made in shops where members of the union only are employed as workmen, and to shops of its members who carry on the business and perform all the work themselves. In the former, a workman so employed has not necessarily, and usually has not, any proprietary interest in the cigars made, and has not, nor has the association, any power to require that the label be affixed to the boxes containing the cigars made there. This depends upon the will or consent of the owner, unless the requirement is in the contract of employment. The employment and wages of a workman depend somewhat upon his reputation as such, and he has a valuable interest in the good will of his workmanship, and in that respect he may have a proprietary right in the result of his labor.

The only recognized indication of a trade-mark is the source, origin or ownership of the article of merchandise on which it is placed. (*Caswell* v. *Davis*, 58 N. Y., 223.) This means that the mark is calculated to distinguish the articles which bear it from those of other makers or vendors. It need not indicate any particular person as maker, manufacturer or vendor, or give the name or address of either. When the mark has become recognized by purchasers as a distinctive designation of a particular maker, manufacturer or seller of a certain quality of goods, it will be sufficient indication of the origin or ownership within the rule requisite to its protection as such, although purchasers may not, from the work or otherwise, be able to tell who is the particular maker or seller of the article. (*Godillot* v. *Harris*, 81 N. Y., 263; *Ins. Oil Tank Co.* v. *Scott*, 33 La. Ann., 946; 39 Am. R., 286, 289.) Abstractly and apart from its application and use, a trade-mark has no recognized ownership. Its value is in its employment in marking the goods upon which it is placed. This gives to it the character of property. It is, then, a symbol of reputation or good will. (*Derringer* v. *Plate*, 29 Cal., 292; 87 Am. Dec., 170; *Bradley* v. *Norton*, 33 Conn., 157.)

The contention on the part of the defense is that there is no ownership of the alleged label as a trade-mark, and that it does not come within the purpose which permits its recognition as such. If identity of proprietorship in the mark and the article to which it is affixed, or if identity in the quality of the goods were requisite to support it as such, the charge cannot be sustained, because the International Union neither manufactures or owns the cigars labeled with it, and they are made in several thousand shops and by many thousand men, under the direction of their several employers, and with such qualities of tobacco as are provided for the purpose. The mark is designed as a symbol to distinguish the cigars produced by the labor of those workmen, which indicates the quality of the article manufactured so far only as it is incident to or dependent upon the workmanship. The fact that goods are produced by the work of one person in the service of another to whom they belong, and that a label cannot be placed upon them without the consent of the owner, does not seem to be in the way of the right of the workman through the means of a trade-mark which he may have devised and caused to be affixed to the product of his labor, to have property in such trade-mark entitled to protection as such. The good will of the result of his work in his department of business in the production of articles of merchandise may be essentially valuable to him. And what may be available to one may in like manner be accomplished by an association of workmen in the same business, and in the production of similar articles of merchandise for the market. In that case they all have a property interest in common in the use of the mark as an indicator of the origin as relates to the productive labor of the manufactured article. This association represents a community of interest for certain purposes, and is composed· of members who constitute it. And to maintain the organization it has governing rules and regulations, which the members undertake to observe, and thus a compact is produced by and between them for the purposes provided by the constitution of the association.

While the object may not be such as to give to it the character of a partnership, the apparent design is to advance the welfare of, and afford mutual benefit to the members, and to maintain a proper standard in character and skill of labor in the service in which they are engaged. And, so far as appears, the purpose is lawful. The

contract relations of the members, represented by its rules and regulations, creates an association, which may be recognized as such for the purposes of supporting the rights as between themselves of the members. (*McMahon* v. *Rauhr*, 47 N. Y., 70; *White* v. *Brownell*, 3 Abb. [N. S.], 318; 4 id., 162; *Ebbinghousen* v. *Worth Club*, 4 Abb. N. C., 300 and note; *Loubat* v. *Le Roy*, 15 id., 1; and note 44; *Poultney* v. *Bachman*, 31 Hun, 49; 27 Alb. Law Jour., 326, and cases there cited.) And for certain purposes voluntary associations are recognized by statute. (Code Civil Pro., § 1919; *Flagg* v. *Swift*, 25 Hun, 623.) The members, through their organization known as the Cigar Makers' International Union of America, may, we think, devise, as they have done, a trade-mark label, to designate the result of their labor, and for that purpose it may be entitled to protection in its relation to such products as a proprietary right for their benefit. (*Strasser* v. *Moonelis*, 23 J. & S., 198.) The fact that their work is not performed under a single employment, but under many different employers in as many widely separated shops, may go to the value of the mark in its application to the cigars made by them, rather than to the right to its protection as such.

In *Pratt's Appeal* (117 Penn. St., 401) a trade-mark, which had been used by the ancestors of three parties, was used by them severally and independently of each other, to distinguish butter manufactured and sold by them, respectively. It was there, as it is here, contended that its use by the several parties destroyed the distinctive feature of the mark, and opened the way for the appropriation of it by the public. But it was held that the severance of the parties in the manufacture of the butter, and in the application of the trade-mark by them, did not deny to such parties the right to its protection against infringement by a stranger.

The cited case of *Jaeger's Company* v. *Le Boutillier* (47 Hun, 521) does not seem to have any necessary application to the question here. It was there held that the right of a patentee, merely as such, entitled him to no property in a trade-mark applicable to the subject of the invention, although as a manufacturer or seller he might, but that his protection was in his patent right. In the case at bar the question is raised whether what is represented by the label is properly the subject of a trade-mark. It is very clear that the lan-

guage there employed, which tends to describe the character or quality of cigars, or of the workmen by whom they are and are not made, cannot be treated as the subject of a trade-mark as such, because there can be no exclusive right to the description of quality of articles produced, or of the skill or quality of the work of the persons by whom they are made; nor can there be any exclusive right to thus appropriate an idea relating to the quality of the goods put in the market. (*Caswell* v. *Davis*, 58 N. Y., 223; *Enoch Morgan's Sons Co.* v. *Troxell*, 89 id., 292; *Mfg. Co.* v. *Trainer*, 101 U. S., 51.) To that extent this blue label is not effectual as such. But it has features which, in other respects, may properly characterize it as a trade-mark. It purports to have been issued by the Cigar Makers' International Union of America, and subscribed to it is the name and title of the person described as its president; and, when issued for use, it has upon it the stamp of the local union of the district in which it is used. The conclusion was warranted that the false or counterfeit label was affixed by the defendant without the consent of the owner of the genuine label, and that it was so affixed before the sale of the box of cigars upon which it was placed was completed by him to the purchaser. The charge made and established by the evidence was within the statute, and warranted the conviction of the defendant; and there seems to have been no error to the prejudice of the defendant in the reception of evidence to which objection was taken.

The judgment should be affirmed.

BARKER, P. J., HAIGHT and DWIGHT, JJ., concurred.

Judgment and conviction affirmed, and the judgment of the Police Court directed to be executed.