STATE OF MISSOURI, Respondent, v. NATHAN BERLIN-SHEIMER, Appellant.

St. Louis Court of Appeals, April 23, 1895.

1. **Purview of Statute for Protection of Trade-marks.** The statute for the registry and protection of trade-marks applies only to technical trade-marks, and not to designs or advertisements which lack the essential features of a trade-mark proper, but are protected by courts of equity from fraudulent imitation in order to prevent unfair competition in business.

The State v. Berlinsheimer.

2. ———: CONVICTION UNDER STATUTE. Accordingly, this statute has no application to the label of a labor union or organization, which is not attached to goods made or dealt in by the organization itself, but is intended to signify only that the labor of members of the organization has entered into the manufacture of goods to which it is attached; and, therefore, a conviction can not be had under the statute for the intentional and fraudulent use of a counterfeit of such label in the sale of goods.

3. ———: ———. To warrant a conviction under this statute for the sale of goods under a counterfeit label, it must appear that the goods sold were not entitled to bear the genuine label; and this is not established by proof that the defendant knew that the label attached was a counterfeit or imitation.

*Appeal from the St. Louis Court of Criminal Correction.*
HON. JAMES R. CLAIBORNE, Judge.

REVERSED.

*Chester H. Krum* for appellant.

*Martin, Bass & Carr* and *Thomas E. Mulvihill* for respondent.

BOND, J.—The information in this case charges the defendant with unlawfully and knowingly selling cigars in boxes, bearing a counterfeit or imitation of the label or trade mark of the Cigar Makers' International Union of America, an association of workingmen; and that the label so used by defendant was intended to represent the cigars contained in the boxes sold by him as those of said Cigar Makers' International Union of America. Defendant entered a plea of not guilty. The case was tried by the court, a jury being waived. On behalf of the state the evidence tended to show that the label or trade-mark affixed to the boxes of cigars sold by defendant was a *fac simile* of one that had been recorded by said union with the secretary of state, whose certificate showing the adoption of the same by said union was received in evidence over

defendant's objection. The form of the label or trade-mark as shown by said certificate was to wit:

"Issued by authority of the Cigar Makers' International Union of America.

"UNION MADE CIGARS.

"This certifies that the cigars contained in this box have been made by a first class workman, a member of the Cigar Makers' International Union of America, an organization opposed to inferior rat shop, coolie, prison, or filthy tenement house workmanship. Therefore, we recommend these cigars to all smokers throughout the world.

"All infringements upon this label will be punished according to law.

"President C. M. I. U. of America."

The evidence for the state also tended to show that defendant sold cigars in boxes bearing this label about the time charged in the information, and that he knew such label was an imitation and counterfeit. It was proven, on the part of the state, that the Cigar Makers' International Union of America, as an association, was not engaged in the manufacture and sale of cigars, but that its individual members were cigar makers in the employ of others who sold cigars, or such members were themselves engaged in the manufacture and sale of cigars. This was all of the evidence on the part of the state. Whereupon the defendant moved the court to discharge him because of the insufficiency of such evidence, but the court overruled said motion and the defendant duly excepted. Defendant offered no evidence. The court adjudged him guilty, and assessed his punishment at a fine of $100, from which judgment he appeals to this court.

The law protects the owner of technical trademarks from infringement. It also protects the user of certain other insignia, attached to merchandise, from

fraudulent imitation by a competitor. The treatises and decisions upon the subject of trade-marks have noted no distinction between these two classes of cases. The rights of the owner are protected by virtue of his property right in a trade mark *eo nomine*, and in the other case for the reason that, although the user may have no trade-mark in the name, label or thing placed upon his goods, yet he may give such designation a value by affixing it' to his goods which the law will protect from unfair competition. In the protection of trade-marks proper equity does not look to the motive of the infringer, but in preventing unlawful competition it will refuse relief, except upon proof of fraud on the part of the competitor, tending to the damage of the party whose design is imitated. *St. Louis, etc., Co. v. Eclipse Carbonating Co.*, 58 Mo. App. *loc. cit.* 418; *Coats v. Thread Co.*, 149 U. S. 562; Sebastian on Trade-marks, 139 *et seq.* Doubtless it was perfectly competent for the legislature to protect by statute, whose violation should be a misdemeanor, either the rights of the owner of a trade-mark, or the rights of a citizen in a label or other device not the subject of trade-mark, from a fraudulent imitation thereof by rival dealers. The question in this case is not what the legislature might have done, but what it has done by the acts under which the present conviction was had. These enactments are, to wit:

"If any mechanic, manufacturer (association or union of workingmen), or other person, shall wish to adopt any particular name, term, design or device as his (or their) trade-mark, to designate, make known or distinguish any goods, wares or merchandise by him (or them) manufactured or prepared, he (or they) may write out a description of such name, term, design or device, describing the same accurately, and sign and acknowledge the same before some officer competent to

take acknowledgment of deeds, and file the same for record in the office of the secretary of state by leaving two copies, counterparts or fac similes thereof, with the secretary of state."

"Any person, persons, (association or union of workingmen), or body corporate or politic, who shall vend or keep for sale any goods, wares, merchandise, compounds or preparations upon which, or in connection with which, any forged imitation or counterfeit label, brand, stamp, wrapper, imprint, engraving, bottle or trade-mark shall be placed, affixed or used, and intended to represent the said goods, wares, implements, merchandise, compounds or preparations, as the genuine goods, wares, implements, merchandise, compound or preparation of any other person or persons, (association or union of workingmen), or body corporate or politic, knowing the same to be imitation or counterfeit, shall be deemed guilty of a misdemeanor."

Prior to 1893 these sections, with the exceptions of the words included in brackets, were part of our statute law, and had been held to be designed for the protection of foreign and domestic trade-marks. *State v. Gibbs*, 56 Mo. 133. The whole scope and the particular words of these two sections demonstrate that they were intended to protect the owners of trade-marks by validating the record thereof, and making it a misdemeanor to counterfeit the same. These statutes were not passed to authorize the record of some symbol which might be protected in the civil courts from imitation on the ground of unlawful or dishonest competition, but were confined, by express and certain terms, to an authorization of the record of trade-marks, and the creation of a criminal offense for selling or keeping for sale the goods of others than the owners of the trake-mark, bearing a counterfeit or imitation of the

trade-mark so recorded.    The operative words of the first section of the above acts establish this.    For, in the first place, after speaking of parties who may wish to adopt particular devices, it adds: "As his or their trade-mark to designate, make known or distinguish any goods, wares or merchandise by him or them manufactured."    It is not perceived how a plainer or more distinct characterization of a trade-mark as known to the law could be put in terms than is done by this language.    *First, all* the things to be recorded are called by that name, and, *next,* the essential quality of a trademark as denoting origin and ownership is referred to as the object to be served by the recorded devices. *Liggett & Meyer Tobacco Company v. Tobacco Company,* 104 Mo. 53.    Obviously the amendment of this act, by the mere insertion of the term "association or union of workingmen" and the corresponding pronouns used thereafter for reference, had no other effect than to give such party the benefit of its provisions. It could not in the nature of things alter the meaning of those provisions..    The conclusion follows that the statutes, *supra,* only embrace trade-mark cases, and not those analogous ones, wherein equity affords relief against the imitation of designs, not susceptible of becoming trade-marks, to prevent unfair dealing. Hence, it is necessary to inquire whether the label adopted by the Cigar Makers' Union was a trade-mark.

In this inquiry it must be borne in mind that the *recording* of the label has no effect in giving it the quality of a trade-mark, if it was not such according to the law applicable to the subject.    *United States v. Braun,* 39 Fed. Rep. 775.    It is one of the indispensable prerequisites to a valid trade-mark that it should point out the true origin or ownership of a vendible commodity to which it is affixed.    That the label in the present case does not have this property, appears from

the conceded facts, since these show that the "association or union of workingmen" claiming it does not own or manufacture any goods to which it is attached. It is true the individual members of that order are engaged, either for themselves or others, in the manufacture of such goods, but this does not meet the requirement of the law that the owner of the trade-mark must affix it to his goods as a designation. As the "association or union of workingmen" adopted the said label as a trade-mark without owning or dealing in any goods to which it must be attached, no title to it as a trade-mark accrued. *Schneider v. Williams*, 14 Atl. Rep. 812; *Cigar Makers' Protective Union v. Conhaim*, 41 N. W. Rep. 943; *Tobacco Company v. Tobacco Company*, *supra.* For this reason the conviction of defendant for counterfeiting a recorded trademark can not be sustained.

We by no means hold that the members of said union who are engaged in manufacturing cigars may not have a proprietary interest in said label as identifying and giving value to their goods, which would entitle them to enjoin an appropriation of it by the defendant under circumstances showing unlawful competition. *Carson v. Ury*, 39 Fed. Rep. 777. The limitation of the statute to counterfeiting or imitating trade-marks *per se*, as a basis of criminal redress, does not conclude the proper parties from their civil remedies.

Again, even if it could be maintained (which is not conceded) that the label in question was a technical trade-mark, the conviction in this case could not be sustained under the evidence in the record. In order to entitle the state to a conviction, all the elements essential to constitute the offense, must be proven. There could be no offense under the section, *supra*, on which this information was framed, unless it appeared

that the defendant put the counterfeit label on goods which were not made by a union workman, intending thereby to represent such goods as those of a union workman. The statute makes this false representation the essence of the offense, and the information charges it. But there is not a particle of evidence in this record tending to show that the cigars contained in the boxes, whereon defendant used said label, were not manufactured or prepared by a member of said union or association. The fact that the defendant knew the label was a counterfeit or imitation, does not bear on the workmanship put upon the goods or the identity of the party bestowing it. If the goods were made by a member of the union, then the label thereon, whether genuine or counterfeit, being on the goods entitled to bear it, could not be evidentiary of a false representation of the goods of others as those of said union. The omission to make such proof was a fatal defect in the state's case. The necessity of such proof is noted in the cases cited by the learned counsel for the state, in all of which it appeared that the essential fact that the counterfeit label was put upon goods *not made* by a member of said union was proven. *Cohn v. People*, 149 Ill. *loc. cit.* 490; *Bloete v. Simon*, 19 Abbott, N. C. p. 90.

For the foregoing reason, the judgment herein is reversed. All concur.