## THE STATE v. BISHOP, *Appellant.*

### Division Two, May 21, 1895.

1. **Criminal Law**: TRADE-MARK: COUNTERFEITING LABOR UNION'S LABEL: STATUTE. The act of the legislature of 1893 (Laws, p. 260) making it misdemeanor to use a label adopted by a union of workingmen, prohibits the unauthorized use of a label adopted by a union of cigar makers and furnished to cigar manufacturers employing only members of the union in the making of the cigars, to indicate that the cigars were made by members of the union.

2. ———: ———: ———: ———: CONSTITUTION. The foregoing act of 1893 is not unconstitutional on the ground that it is class legislation (Const., art. 4, sec. 53.)

3. ———: ———: ———: ———: ———. A statute relating to persons or things as a class is a general law.

128  373
146  399

128  373
87a  559

128  373
d167  442

4. ———: ———: ———: ———: INDICTMENT. It is not necessary for an indictment under said act of 1893 (Laws, p. 260) to charge an exclusive right in the union to the use of the label.

5. ———: ———: ———: ———. Guilty knowledge on the part of the defendant that the label is counterfeited must be shown to authorize a conviction under the act of 1893, *supra*.

*Appeal from St. Louis Court of Criminal Correction.*— HON. J. R. CLAIBORNE, Judge.

REVERSED AND REMANDED.

*Eugene McQuillin* for appellant.

(1) The label of the Cigar Makers' International Union of America is not a trade-mark, and is, therefore, not entitled to protection under the laws of Missouri relating to the registration and piracy of trademarks. *McVey v. Brendel*, 144 Pa. St. 235; *Weener v. Brayton*, 152 Mass. 101; *Schneider v. Williams*, 44 N. J. Eq. 391; *Carson v. Ury*, 39 Fed. Rep. 777; *Trash Fish Co. v. Wooster*, 28 Mo. App. 408; *Tobacco Co. v. Tobacco Co.*, 104 Mo. 53. Because: *First.* The cigars are not "manufactured or prepared" by the union as an organization. Laws of Mo. 1893, p. 260, sec. 1. *a.* The union is not a manufacturer or dealer in cigars, or engaged in trade or commerce of any kind; and the right to a trade-mark can not exist as a mere abstact right, independent of and disconnected from, a business. It is not property as distinct from, but only as incident to, the business. *Union v. Conhaim*, 40 Minn. 243; *Mfg. Co. v. Merkel*, 1 Mo. App. 305; *Skinner v. Oakes*, 10 Mo. App. 45. *b.* There is and can be no trade-mark in labor, either at common law or under the Missouri statute. *Second.* It does not point out the source and origin of the cigars, the place of manufacture, the name of the manufacturer or dealer, nor

the name of the maker. *Filley v. Fassett*, 44 Mo. 168; *Tobacco Co. v. Tobacco Co.*, 104 Mo. 53. *Third.* Our statute does not protect labels, etc., as such, but only such names, terms, devices, etc., as may be adjudged to be trade-marks. It is designed to protect "trade-marks" as contradistinguished from mere names, terms, devices and labels. Laws of Mo. 1893, p. 260, sec. 1; *Alden v. Gross*, 25 Mo. App. 123; *Trask Fish Co. v. Wooster*, 28 Mo. App. 408; *Snodgrass v. Welle*, 11 Mo. App. 590. *Fourth.* The right to use the label in question is not a property right, without which there can be no trade-mark. *a.* It is a mere personal privilege contingent upon membership in the union. *b.* Its object is simply to indicate membership in the union; when membership ceases, the personal privilege, the right to use the label, ceases. *Union v. Conhaim*, 40 Minn. 243; *Fifth.* There is no exclusive use in the label. *Rogers v. Taintor*, 97 Mass. 291; *Chadwick v. Covell*, 151 Mass. 190; *Weener v. Brayton*, 152 Mass. 101. (2) The act of 1893 is illegal and void and against the public policy of the state of Missouri, productive of oppression, illegal conspiracies, combinations and boycotts. *McVey v. Brendel*, 144 Pa. St. 235. (3) The act of 1893 is unconstitutional, is class legislation, discriminative against citizens of Missouri, and violative of that clause of section 53, article 4, of the state constitution, which inhibits the legislature from "granting to any corporation, association or individual any special or exclusive right, privilege or immunity." (4) The Cigar Makers' International Union of America, not being composed exclusively of citizens of Missouri, can not, under our laws relating to the registration of trade-marks, acquire any rights in said label as against citizens of Missouri. *State v. Hagen*, 33 N. W. Rep. (Ind.) 223. (5) The information is insufficient because it fails to aver exclusive ownership of the

label in question in the organization known as the Cigar Makers' International Union of America. *United States v. Braum*, 39 Fed. Rep. 775. (6) The state failed to prove that at the date of the sale defendant sold the box of cigars, containing a counterfeit label, "knowing the same to be imitation or counterfeit," as provided by the express language of the statute. Laws of Mo. 1893, p. 261, sec. 4. (7) The Cigars Makers' International Union of America having no property rights, either individually or collectively, in the cigars made by its members to which its label is affixed, a conviction can not be sustained against one who sells cigars to which a counterfeit label is attached. Laws of Mo. 1893, p. 261, sec. 4.

*R. F. Walker*, Attorney General, for the state.

(1) The statute makes the unauthorized use of any label which has been registered by the secretary of state a misdemeanor. Laws of Mo. 1893, p. 260. The facts of this case fall within the provisions of the statute. *People v. Fisher*, 57 Hun, 552; *State v. Hagen*, 33 N. E. Rep. (Ind.) 223; *Cohn v. People*, 23 L. R. A. 821. A term or a device may be protected as a trade-mark by an express statute. *Faulkenburg v. Lucy*, 35 Cal. 52; see also, *Puerring v. Compton*, 6 Ohio, C. C. 483. (2) The statute is neither contrary to public policy nor class legislation. *Cohn v. People* (Ill.) 23 L. R. A. 821. (3) The cases cited by appellant from Minnesota, Massachusetts and Pennsylvania are rulings made by their courts of last resort in the absence of any statutes making it a penalty to use the label in question without authority, and hence they can have no application to the case at bar. We refer to *Cigars Makers v. Conhaim*, 40 Minn. 243; *McVey v. Brendel*, 144 Pa. St. 235; *Weener v. Brayton*, 152

Mass. 101. (4) It was not necessary, under the statute upon which this prosecution was based, to aver exclusive ownership in the label by the cigar makers' union. Laws, Mo. 1893, p. 260.

BURGESS, J.—Defendant was convicted and fined $100 in the St. Louis court of criminal correction under an information filed against him in said court by the assistant prosecuting attorney, charging him with having sold a box of cigars to one David Kreyling, on June 26, 1894, upon which there was a counterfeit label of the Cigar Makers' International Union of America, contrary to, and in violation of, an act of the general assembly of the state of Missouri, entitled an act to repeal sections 8569, 8570, 8571, 8572, 8573, 8574, 8575, 8576 and 8577 of the Revised Statutes of 1889, entitled "Trade Marks" and to enact eight new sections in lieu thereof (Laws, 1893, p. 260). The case is in this court on defendant's appeal.

Sections 1 and 4 of the act under consideration are as follows:

"Section 1. (Sec. 8569). *Any person may adopt a trade-mark—to be recorded.*—If any mechanic, manufacturer, association or union of workingmen, or other person, shall wish to adopt any particular name, term, design or device as his or their trade-mark, to designate, make known or distinguish any goods, wares or merchandise by him or them *manufactured or prepared,* he or they may write out a description of such name, term, design or device, describing the same accurately, and sign and acknowledge the same before some officer competent to take the acknowledgment of deeds, and file the same for record in the office of the secretary of state, by leaving two copies, counterparts or facsimiles thereof, with the secretary of state; said secretary shall deliver to such mechanic, manufacturer,

association *or union of workingmen,* or other person, so filing the same, a duly attested certificate of the record of the same, for which he shall receive a fee of one dollar; such certificate shall, in all suits and prosecutions under this act, be sufficient *proof of the adoption* of such label, trade-mark or form of advertisement, *and of the right* of such mechanic, manufacturer, *association or union of workingmen,* or other person, to adopt the same. No label, trade-mark or form of advertisement shall be recorded that in any way resembles or would probably be mistaken for a label or trade-mark already of record."

"Sec. 4. (Sec. 8572). *Penalty for keeping or selling goods with false brand.*—Any person, persons, association or union of workingmen, or body corporate or politic, who shall vend or keep for sale any goods, wares, merchandise, compounds or preparations upon which or in connection with which *any forged, imitation or counterfeit label,* brand, stamp, wrapper, imprint, engraving, bottle or trade-mark *shall be placed,* affixed or used, and intended to represent the said goods, wares, implements, merchandise, compounds or preparations, as the genuine goods, wares, implements, merchandise, compound or preparation of any other person or persons, association or union of workingmen, or body corporate or politic, knowing the same to be imitation or counterfeit, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine of not less than $100 nor more than $5,000, or by imprisonment in the county jail not less than one month nor more than twelve months, or both, and shall also be liable in a civil action to the person or persons, association or union of workingmen, or body corporate or politic, whose goods, wares, implements, merchandise, compounds or preparations, is imitated or counterfeited, or

whose label, stamp, wrapper, engraving, imprint, bottle, or trade-mark is imitated, forged or counterfeited, placed, affixed or used, for all damages such person or persons, associations or union of workingmen, or body corporate or politic, may or shall sustain, both by virtue of the loss of profits and the damage done to the reputation of the said genuine article, goods, wares, implements, merchandise, compound or preparation, by reason of any of the acts in any section of this chapter mentioned, and may be restrained or enjoined by any court of competent jurisdiction from doing or performing any of the acts herein mentioned.''

The only objection to the information is that it does not aver exclusive ownership of the label in question in the cigar maker's union.

Defendant was a dealer in cigars in the city of St. Louis and on the twenty-sixth day of June sold to one David Kreyling a box of cigars upon which there was a counterfeit label of the Cigar Makers' International Union of America, which is as follows, to wit:

| SEPT., 1880.  ISSUED BY AUTHORITY OF THE  CIGAR MAKERS' INTERNATIONAL UNION OF AMERICA.  UNION-MADE CIGARS. | LOCAL |
|---|---|
| DEVICE. — THIS CERTIFIES, That the Cigars contained in this box have been made by a First-class workman, a member of the Cigar Makers' International Union of America, an organization opposed to inferior rat-shop, coolie, prison or filthy tenement-house workmanship. Therefore we recommend these cigars to all smokers throughout the world. All infringements upon this label will be punished according to law.  G. W. PERKINS, President, C. M. I. U. of America. | STAMP. |

The label of which the one introduced in evidence was a counterfeit was duly registered. Said union was a voluntary, unincorporated association of cigar makers, having members and lodges or branches in the various states of the Union and Canada; was not a dealer or manufacturer in cigars; nor was its object trade or commerce, but merely for the purpose of promoting the intellectual, moral and social qualities of its members. A member of the union has the right to use the label, but no other person has, except those who, or firms which, employ members of the union in the capacity of cigar makers or packers, who are also permitted to use the label so long as they employ members of the union. The label is not the exclusive property of citizens of the state of Missouri but the right to use it is shared alike by all [persons, members of the union, and by them who employ union men. At the time of the sale of the box of cigars defendant stated that the label thereon was the genuine label of the union, and there was no evidence tending to show that he knew to the contrary.

The first contention is that the label of the Cigar Makers' International Union of America is not a trademark, and is, therefore, not entitled to protection under the law quoted. It may be conceded that the label is not what is generally understood by law writers to be a technical trade-mark, because it does not pretend or intimate that the cigars are owned, prepared, or manufactured, by the union as an organization, or that as such union it has any interest or property therein, nor by what particular firm or person the cigars to which it may be attached were manufactured, the only right conferred on members of the organization and firms which employ members of the union in the capacity of cigar makers or packers being to use the same, the object and purpose being to designate the cigars thus labeled, from cigars manufactured by persons other

than members of the union. The same label was held not to be a valid common law trade-mark in *McVey v. Brendel*, 144 Pa. St. 235; *Weener v. Brayton*, 152 Mass. 101, and by a divided court in *Cigar Makers' etc., Union v. Conhaim*, 40 Minn. 243.

In *Weener v. Brayton, supra,* (p. 103), it was said: "The right to a trade-mark can not exist as a mere abstract right, independent of and disconnected from a business. It is not property as distinct from, but only as incident to, the business. It can not be transferred, except with the business, may be sold with it, and ordinarily passed with it."

The law not only protects the owner in the user of a technical trade-mark but it protects him in the use of other insignia, by label, symbol or otherwise, which he may attach to merchandise to distinguish it from all other articles of merchandise in the market, and this protection may be had, by injunctive proceedings at the instance of a member of an unincorporated association which has adopted a label purporting to be issued by the association to be placed on boxes of merchandise made by members of the association, who have the sole legal right under their articles of association to use the same, against any person, not authorized to make use thereof, and who is making fraudulent use of such label. *Carson v. Ury*, 39 Fed. Rep. 777, and authorities cited.

If, then, the unlawful use of the label under consideration, could be restrained by injunctive proceedings, instituted by a member of the union against a competitor in business using the label without authority, it would seem to follow as a sequence that the state, by appropriate legislation, might protect the use of such label, and prohibit its use by persons, other than members of the union, or persons who employ members thereof in the manufacture and sale of cigars. Cer-

tainly no personal rights, or principles of public policy are violated by such legislation, and this is true, even though the legislature may have used the word "trade-mark," in the sense that it is ordinarily understood and used by text writers and defined by judicial decisions.

In *People v. Fisher*, 50 Hun, 552, the defendant was convicted under a statute of the state of New York of counterfeiting and imitating a trade-mark, and affixing the same to an article of merchandise in violation of the statute. The trade-mark was devised by the Cigar Makers' International Union of America, and is the same one involved in this controversy. In that case it was held, "that the members of the organization might lawfully devise, as they had done, a trade-mark label to designate the products of their labor, and "that a person counterfeiting and imitating such trade-mark, and affixing the same to an article of merchandise, not the product of the labor of members of the union, was properly convicted of the offense of counterfeiting and imitating a trade-mark." In course of the opinion it is said: "The only recognized indication of a trade-mark is the source, origin or ownership of the article of merchandise on which it is placed. (*Caswell v. Davis*, 58 N. Y. 223.) This means that the mark is calculated to distinguish the articles which bear it from those of other makers or vendors. It need not indicate any particular person as maker, manufacturer or vendor, or give the name or address of either. When the mark has become recognized by purchasers as a distinctive designation of a particular maker, manufacturer or seller of a certain quality of goods, it will be sufficient indication of the origin or ownership within the rule requisite to its protection as such, although purchasers may not, from the work or otherwise, be able to tell who is the particular maker or seller of the

article. (*Godillot v. Harris*, 81 N. Y. 263; *Ins. Oil Tank Co. v. Scott*, 33 La. Ann. 946.) Abstractly and apart from its application and use, a trade-mark has no recognized ownership. Its value is in its employment in making the goods upon which it is placed. This gives to it the character of property. It is, then, a symbol of reputation or good will. (*Derringer v. Plate*, 29 Cal. 292; *Bradley v. Norton*, 33 Conn. 157)."

In *Cohn v. People*, 23 L. R. A. 821, defendant was convicted under the statute of Illinois for using on boxes of cigars sold by him a counterfeit of the label of the "Cigar Makers' International Union of America," and it was held that punishment of imitators or counterfeiters of trade-marks was properly provided for under the laws of that state under which the conviction was had. See, also, *State v. Hagen*, 33 N. E. Rep. 223.

The question then recurs, was the defendant guilty of a misdemeanor under the statute, if he knowingly placed a counterfeit label of the Cigar Makers' International Union of America, on the box of cigars sold by him to the witness Kreyling.

In a recent decision by the St. Louis court of appeals in the case of *State v. Berlinsheimer*, 62 Mo. App. 168, it was held that the label in question, was not protected by the act of 1893, and that a conviction thereunder for knowingly placing a counterfeit of the label upon a box of cigars and then selling the cigars, could not be upheld. The decision is predicated upon the fact that prior to 1893 the statute was designed alone for the protection of foreign and domestic trade-marks, and that nothing was added thereto by the repeal of certain sections and the enactment in lieu thereof of sections one and four, *supra*. In other words that the law was not so amended as to include a label like the one in question. Prior to that time

the statute law was only intended for the protection of foreign and domestic trade-marks. *State v. Gibbs*, 56 Mo. 133.

While all statutes pertaining to crimes and their punishments should be strictly construed, and nothing left to intendment, they should not be so construed as to thwart the evident will and intention of those who enacted them, when that intention is plainly and fairly deducible from the law itself. When that is done in this case we can but conclude that the purpose and intent of the legislature was to amend the law so as to protect and that it does protect labels as trade-marks when adopted by associations or union of workingmen to make known and distinguish goods, wares, and merchandise, manufactured or prepared by them, from those manufactured or prepared by other persons, unions or associations. Wherever the law was amended, it was so as to include "associations or union of workingmen," which is very persuasive at least that the purpose was to protect them in any label, advertisement or symbol that they might adopt as their trademark. Moreover, under the law of 1889, a trade-mark was required to be recorded in the office of the recorder of deeds of the county where the goods, wares, and merchandise were manufactured, while, by the act of 1893, it is required to be recorded in the office of secretary of state, whose certificate is made proof of the adoption of such label, trade-mark or form of advertisement, and of the right of such association or union of workingmen to adopt the same. The law as amended expressly conferred upon any association or union of workingmen a right that they did not possess under the statute before, that is, the right to adopt as a trade-mark a label such as the one in question.

Our conclusion is that the act not only embraces technical trade-marks but that it includes any label,

symbol or advertisement which may be, or has been adopted by any "association or union of workingmen" as a trade-mark, in accordance with its provisions, hence our disapproval of the case last cited.

It is next contended that the act of 1893, is unconstitutional, is class legislation, and in violation of section 53, article 4, of the state constitution which inhibits the legislature from "granting to any corporation, association or individual any special or exclusive right, privilege or immunity." We are unable to see the force of this contention. It is well settled law, in this state at least, that a statute relating to persons or things as a class is a general law. *State ex rel. v. Herrmann*, 75 Mo. 340; *State ex rel. v. Tolle*, 71 Mo. 645; *Lynch v. Murphy*, 119 Mo. 163. The law does not relate to particular persons or things of a class, but embraces within its provisions all associations or unions of workingmen, and clearly does not fall within the inhibition of the constitution. *Cohn v. People, supra.*

A further contention is that the information is insufficient because it fails to aver exclusive ownership of the label in question in the organization known as the "Cigar Makers' International Union of America." No such averment seems to be required under the law, which makes it a misdemeanor for any person, persons, association or union of workingmen, or body corporate or politic, who shall vend or keep for sale any goods, wares, merchandise, compounds or preparations upon which or in connection with which any forged, imitation or counterfeit label shall be placed, affixed or used, and intended to represent the said goods, wares, merchandise as the genuine goods, wares, implements, merchandise of any other person or association or union of workingmen. The information is in the language of the statute, and is well enough.

A final contention is that the state failed to prove guilty knowledge upon the part of the defendant, that is, that at the time he sold the box of cigars, containing a counterfeit label, he knew the label to be counterfeit. This contention is not without merit. The record before us is barren of proof as to guilty knowledge on the part of defendant, in the absence of which he was not guilty of any offense under the law, which expressly provides that the label must have been used knowing it to be an imitation or counterfeit. For failure of proof in this regard the judgment is reversed and the cause remanded. All of this division concur.