THOMAS F. TRACY *vs.* JOSEPH BANKER.

Suffolk. December 10, 1897. — February 5, 1898.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Protection from Use of Counterfeit Label — Statute — Unincorporated Trade Union — Legality of Association — Equity — Laches — Fraudulent Use of Genuine Label.*

The St. 1895, c. 462, relating to the protection of "manufacturers from the use of counterfeit labels and stamps," protects an unincorporated trade union in the use of labels for trade union purposes.

If the constitution of an unincorporated trade union as a whole is not illegal, the association is not deprived of the protection of the law for what otherwise would be its rights, if in some incident or particular the purposes which it expresses are unlawful.

If an unincorporated association had a label registered under St. 1893, c. 443, the fact that a person began to use a similar label before St. 1895, c. 462, was passed,

after having been permitted on his application to use the label for a time, does not deprive the association of its rights under the latter statute.

The fact that the officers of an association entitled to the benefit of St. 1895, c. 462, relating to protection from the use of counterfeit labels and stamps, knew of the defendant's acts for more than two years before bringing a bill in equity to restrain him from fraudulently using the association's label, but supposed that they could have no remedy in equity against him, does not show such laches as will defeat the suit.

An association entitled to the benefit of St. 1895, c. 462, relating to protection "from the use of counterfeit labels and stamps," is entitled to be protected against the use of real labels in a fraudulent way, as well as against the use of counterfeits.

BILL IN EQUITY, filed April 29, 1897, in the Superior Court, by the plaintiff as Vice President of the Cigar Makers' International Union of America, to restrain the defendant from using a label on boxes of cigars manufactured by him.

Hearing before *Sheldon*, J., who found the following facts.

The Cigar Makers' International Union is a voluntary association of cigar makers. The plaintiff is a member and officer thereof. The objects and operations of the association prior to September, 1896, are as stated in its constitution of 1893, and subsequent to that time as stated in its constitution of 1896. In September, 1880, the union adopted for its protection a label or form of advertisement not previously adopted or owned by any other person, firm, association, or union, announcing that the goods to which it was attached were manufactured by members of the union, and on August 22, 1893, filed copies thereof in the office of the Secretary of the Commonwealth, in accordance with the provisions of St. 1893, c. 443, § 4, and received a duly attested certificate of the record thereof.

In January, 1894, the union altered such label by making some changes in the printed matter thereof, and on April 27, 1894, duly filed copies of the label as altered with the Secretary of the Commonwealth, all proper certificates being made and all necessary formalities complied with. Such label has been in use in its original form from September, 1880, to January, 1894, and in its amended form from January, 1894, to the present time, and has been of considerable value and benefit to the union and to its members. These labels are printed upon specially prepared paper for the union in Chicago, Illinois, and are distributed by its officers to the different local unions in the dif-

ferent States, these local unions being branches of the Chicago union, and are distributed by the officers of these local unions to those manufacturers whom the unions allow to receive them, in the following manner. A member of the union in the factory of each such manufacturer is appointed shop collector, and at stated short intervals, usually of a week, receives from the local union just enough labels to supply one for each box of cigars manufactured or to be manufactured during such interval, with the agreement and upon the condition that such labels shall be used only by placing them upon the boxes of cigars manufactured in such factory. Each separate factory or place of business used for the manufacture of cigars has a particular number assigned to it under the revenue laws of the United States; and whenever labels are issued to any one, the local union issuing them stamps upon each label so issued the number of the union issuing the label, and the factory number of the manufacturer to whom the issue is made. The defendant knows, and has known since the last part of December, 1893, that the labels of the union are distributed and issued in this way, and upon this agreement and condition.

The union itself does not manufacture or sell, and never has manufactured or sold, any cigars, and does not intend to do so, and its sole revenue is from the dues paid to it by its members; and the union itself derives no pecuniary advantage from the use of the label.

The defendant is a manufacturer of cigars, having a factory in Boston. He did not use the labels issued by the union, or labels similar to them, before November, 1893. At that time, he applied to officers of the local union for permission to use the labels, and received such permission, upon condition that he should make certain sanitary improvements in his factory, which he did. Thereupon he received from the local union these labels until about January 4, 1894, when disputes arose between him and the local union, the right to use the label was taken from him by the union, he discharged those employees of his who were members of the union, and since then he has not employed any members of the union, and has had no right to use the labels other than such right, if any, as may belong to each and every manufacturer of cigars. But he is now using, and since a time

early in 1894 has been using, upon the cigars made and sold by him, labels which are exact copies of those of the union. He has procured all the labels so used by him by purchasing them from persons to whom he believed they had been issued by local unions, branches of the International Union, in the manner and upon the condition above stated, and he has mutilated them by erasing the stamped number of the factory to which they purported to have been issued. Some of the labels which he has so purchased and used were really issued in this way, and were used by him in intentional violation of the agreement and condition upon which the union had issued them; but the others of the labels were mere counterfeits of the labels of the union. The statements on the labels, as applied to the cigars made by the defendant, are false, and he knows that they are false.

The officers of the union have for more than two years known of the actions of the defendant above stated. The secretary of the local union, on April 23, 1895, sent to the defendant a letter, warning him that he was liable to be prosecuted criminally, and on January 30, 1895, distributed in Boston and the neighborhood circulars stating that certain brands of cigars which were being sold bore a counterfeit or imitation of the label of the International Union. It also appeared that the officers of the union in 1897, shortly before the filing of this bill, distributed extensively in Boston and vicinity another circular, stating that certain cigars were " scab made " and bore " copy of union label."

The officers of the union were aware of the decision in the case of *Weener* v. *Brayton*, 152 Mass. 101, and until early in 1897, when they consulted new counsel, supposed they could have no remedy in equity against the defendant.

" I find, if the fact is competent to be proved, that though they were aware of the passage of Sts. 1893, c. 443, and 1895, c. 462, their attention had been called merely to the penal provisions of these statutes, and they were not aware that any redress in equity was given by these statutes, or either of them."

Upon these facts, at the request of both parties, the case was reported for the determination of this court; such decree to be entered therein as justice and equity might require.

*W. Schofield*, for the plaintiff.

*B. H. Greenhood*, for the defendant.

HOLMES, J.    This is a bill in equity, brought under St. 1895, c. 462, § 3, by the officer of a voluntary association, as authorized by that section, to prevent the defendant from fraudulently using the association's trades union label, and counterfeits of such label.    The defences requiring notice are that the statute protects only merchants or manufacturers, that the association is not of a kind that will be protected by the court, and laches.

The label is part of the well known machinery of trades unions, and the use of it is found, if a finding be necessary, to be of value to the union and its members.    It would not be travelling too far from the record, perhaps, if we should assume that the use of the label is in fact, as certainly it might be, of far more economic importance to the union than are many or most of the trade-marks, strictly so called, which are protected by the courts.    Nevertheless, technical difficulties, which would have been hard to escape from without some subtlety or a statute, prevented the plaintiff from recovering in a case like this. *Weener* v. *Brayton*, 152 Mass. 101.    See *State* v. *Bishop*, 128 Mo. 373, 381.    That was in 1890.    Just before the argument of that case there was an attempt at legislation on the subject. St. 1890, c. 104.    Three years later a statute was passed, which certainly looks as if it had been intended in part to meet that decision.    St. 1893, c. 443.    But this act was still somewhat under the influence of the notion that protection of the label was a protection of manufacture, and after an amendment by St. 1894, c. 285, it was repealed by the act of 1895, which still is in force.    It is true that the present statute is entitled " An Act to protect manufacturers from the use of counterfeit labels and stamps."    But we can see no sufficient room for doubt that it protects the plaintiff.    The first section extends to " any person, association, or union."    That unincorporated associations or unions were contemplated is shown by § 3, already referred to, which allows suits to be prosecuted by the officers of such associations or unions.    It is impossible to believe that when the statute mentions unincorporated unions it does not refer to trade unions.    It authorizes such unions to adopt, as well as to record a label.    Therefore it creates a right, if the court is un-

able to recognize one without its aid. If it applies to trade unions, it must be taken to apply to them as they ordinarily are, that is, as associations of workmen, not as manufacturers or vendors of goods. It contemplates that the labels will be applied to merchandise, as of course they must be, and as these labels are. But it carefully abstains from using a word which implies that the protection or wrongful use of labels is confined to manufacturers or vendors. The policy of the statute is shown by the above cited amendment of 1894 to the earlier act, which had for its object to extend the liability to others beside manufacturers.

If, as we think, the statute expressly creates or recognizes the right of trade unions to be protected in the use of labels for trade union purposes, the suggestion that the association represented by the plaintiff is an unlawful association falls of itself. It is too late to make such a contention as to trade unions generally, even apart from the statute under which this suit is brought. But the general purposes of this union are similar, so far as we know, to the general purposes of other unions. The constitution as a whole is not illegal, and the association is not deprived of the protection of the law for what otherwise would be its rights, if in some incident or particular the purposes which it expresses are unlawful, which we do not imply. See *Cohn* v. *People*, 149 Ill. 486; *Carson* v. *Ury*, 39 Fed. Rep. 777; *State* v. *Hagen*, 6 Ind. App. 167, 173; *State* v. *Bishop*, 128 Mo. 373.

The plaintiff's association had a label registered under the earlier statute of 1893. The defendant has the boldness to urge that, because he began his attempt to defraud the union in 1894, before the act of 1895 was passed, after having been permitted on his application to use the label for a time, therefore the plaintiff's union has no rights under the statute. We do not think the suggestion needs more than a statement.

The plaintiff has lost no rights through laches. *Nudd* v. *Powers*, 136 Mass. 273, 277, 278. *Menendez* v. *Holt*, 128 U. S. 514, 523, 524.

Finally, as the plaintiff makes out his right, it is to be protected against one form of swindling as well as another, — against the use of real labels in a fraudulent way, as well as against the use of counterfeits, if indeed the real labels as used by the defendant after mutilation are not counterfeits within the statute.

*Decree for the plaintiff.*