ATLANTIC MILLING Co. *v*. ROBINSON and others.

(*Circuit Court, S. D. New York.* May 6, 1884.)

1. TRADE-MARK—RIGHT TO THE SYMBOL INSEPARABLE FROM RIGHT TO SELL COMMODITY.
    The right to the exclusive use of a word or symbol as a trade-mark is inseparable from the right to make and sell the commodity which it has been appropriated to designate.

2. SAME—MAY BE PECULIAR TO A FACTORY AND PASS WITH IT.
    A trade-mark may be appropriated by a manufacturing company as well as an individual, and pass with the property to their successors.

3. SAME—MEASURE OF DAMAGES.
    The measure of damages is limited by the extent to which the unlawful use
    of the design by the defendant has interfered with the sale of plaintiff's com-
    modity.

In Equity.

*Briesen & Steele,* for complainant. *A. v. Briesen,* of counsel.

*L. H. Arnold, Jr.,* for defendant Robinson.

*Geo. H. Forster,* for defendant Rowland.

WALLACE, J. The proofs show that in 1861 the firm of Alexander
H. Smith & Co., then the proprietor of the Atlantic mills, at St. Louis,
Missouri, adopted the word "Champion," and employed it to distin-
guish a particular quality of flour made and sold by them. From
that time until the present it has been used as a trade-mark either
by that firm or the several firms and corporations that became the
proprietors of the property and business of the Atlantic mills. The
flour to which it was applied was particularly adapted for the south-
ern export trade, and became generally known and recognized as the
production of the Atlantic mills by the word which was thus used to
designate it.

The complainant has not made proof of any formal transfer by
Alexander H. Smith & Co. to any of the succeeding proprietors of the
Atlantic mills of the right to use the trade-mark; and if complainant
has acquired that right it is because it passed upon the purchase of
the mill property and business as an accessory thereof to each pur-
chaser who became the proprietor of the premises, including the com-
plainant, without any agreement respecting the trade-mark.

The right to the exclusive use of a word or symbol as a trade-mark
is inseparable from the right to make and sell the commodity which
it has been appropriated to designate as the production or article of
the proprietor. It may be abandoned if the business of the proprie-
tor is abandoned. It may become identified with the place or estab-
lishment where the article is manufactured or sold, to which it has
been applied, so as to designate and characterize the article as the pro-
duction of that place or establishment rather than of the proprietor.
A trade-mark of this description is of no value to the original proprie-
tor because he could not use it without deception, and therefore would
not be protected in its exclusive enjoyment. Such a trade-mark
would seem to be an incident to the business of the place or estab-
ment to which it owes its origin, and without which it can have no
independent existence. It should be deemed to pass with a transfer
of the business because such an implication is consistent with the
character of the transaction and the presumable intention of the par-
ties. *Dixon Crucible Co.* v *Guggenheim,* 3 Amer. Law T. 228; *Hud-
son* v. *Osborne,* 39 L. J. Ch. (N. S.) 79; *Shipwright* v. *Clements,* 19
Weekly Rep. 599.

The defendant controverts the right of the complainant to the ex-
clusive use of the word "Champion" as a trade-mark by the testimony

of two witnesses, to the effect that they used it or saw it used as a brand upon flour before it was adopted by Alexander H. Smith & Co. The testimony of the witness Potter fails to show the use of the word, in the instances to which he refers, prior to 1867, and is therefore valueless. The witness Reamey testifies that he used it for branding the flour of nine different firms as long ago as 1857. None of the persons for whom it was so used have been produced, although many of them were accessible. If Reamey's statement is correct it could have been readily corroborated. The failure to do so is significant. His statement is not supported by any extrinsic evidence, and is not deemed sufficiently reliable to defeat the complainant's right.

Upon the accounting to ascertain damages, the fact is not to be overlooked that, in the instances in which the trade-mark has been used by the defendant in connection with the names of other manufacturers than the complainant's, damages are measured by the extent to which the unlawful use of the word "Champion" has interfered with the sale of their flour. Their right to an injunction is not affected because the appropriation of their trade-mark has been a limited one, and it is not incumbent on them to show that it has been copied in every particular. It is sufficient if his trade-mark has been copied to an extent calculated to mislead purchasers, and cause the article to which it has been applied pass as their article. The cases *Gillott* v. *Esterbrook,* 48 N. Y. 374; *Newman* v. *Alvord,* 51 N. Y. 189; *Hier* v. *Abrahams,* 82 N. Y. 519; and *Walton* v. *Crowley,* 3 Blatchf. 440, are instructive upon this point.

A decree is ordered for complainant.