LEON WEENER & others *vs.* LESTER BRAYTON.

Suffolk.   March 25, 1890. — June 24, 1890.

Present : FIELD, DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Voluntary Association — Label — Trade-mark — Equity Jurisdiction.*

If a voluntary association of workmen, embracing many members, has adopted for use upon boxes containing articles made by the members a label indicating that the articles were made by some of its members, but not by whom, the right to use which belongs equally to all of them, and continues only while they remain members, a bill in equity cannot be maintained by individual members or officers of the association to restrain an infringement of the label as a trade-mark.

BILL IN EQUITY, by the members and officers of a voluntary association, against a workman to prevent the alleged infringement of a label as a trade-mark. The defendant demurred to the bill for want of equity. *C. Allen*, J., sustained the demurrer, and dismissed the bill; and the plaintiffs appealed to this court. The material allegations of the bill appear in the opinion.

*B. F. Butler*, (*F. L. Washburn* with him,) for the plaintiffs.

*S. H. Tyng*, for the defendant.

DEVENS, J. This case is before us upon a demurrer, which concedes for the purpose of this hearing the truth of the allegations of the bill. From these it appears that the plaintiffs are officers and members of the Cigar Makers' Union, No. 97; that this union is a member of the Cigar Makers' International Union of America, which is a voluntary association composed wholly of local unions; that the Cigar Makers' International Union has authorized and directed its president to furnish to all local unions a trade-mark label, to be pasted upon the outside of each box containing cigars made by members of the union; that cigars made by such members have acquired a valuable reputation, and that in consequence the right to the exclusive use of such labels is of great value; that the defendant has caused to be put on boxes containing inferior cigars, and not made by members of the union, a counterfeit label so closely resembling said union label as to deceive purchasers; and that, for the purpose of deceiving the purchasers and of obtaining higher prices from them, he has sold cigars in boxes on which were pasted such counterfeit labels, well knowing the cigars contained therein were not made by members of the union, and were inferior in workmanship and quality to those made by them, which are rightfully sold under the so called union label.

A trade-mark is a peculiar name or device, by which a person dealing in an article designates it as of a peculiar kind, character, or quality, or as manufactured by or for him, or dealt in by him, and of which he is entitled to the exclusive use. *Rogers* v. *Taintor*, 97 Mass. 291. *Chadwick* v. *Covell*, 151 Mass. 190. There is no exclusive ownership of the names, devices, symbols, or marks which constitute a trade-mark, apart from the use or application of them; but the word "trade-mark" is the designation of them when applied to a vendible commodity. The

exclusive right to make such use or application is rightly treated
as property.   While property in these names, devices, etc. for
all purposes cannot exist, yet property as applied to particular
vendible articles may exist when such articles have gone into the
market identified by them, and have thus obtained reputation or
currency by them as indicating a special or superior quality, or
as the work of a particular manufacturer, or some other circum-
stance that commends them to the public.   Kerr on Injunctions,
(3d ed.) 395.   The jurisdiction of a court of equity to restrain the
wrongful use of such trade-marks by persons not entitled thereto
is founded, not upon the imposition upon the public thus prac-
tised, but on the wrongful invasion of the right of property
therein which has been acquired by others.   A remedy is afforded
only to the owner of the right of property in such trade-marks on
account of the injury which is thus done to him.   The wrong
done to him consists in misrepresenting the vendible articles
sold as being those of the true owner of the trade-mark, and
thus to a greater or less extent depriving him of the benefit of
the reputation he has given to the articles made or dealt in by
him.   To the validity of a trade-mark, so as to entitle any one
to a remedy for an invasion thereof, three things have been held
necessary : that he must show that he has adopted some marks
or signs not in use by others to distinguish the goods manufac-
tured or sold by him from those of other manufacturers or traders;
that these must be applied to some article of traffic ; and that
such articles must have been placed on the market.  *Schneider*
v. *Williams*, 17 Stew. 391.   *Chadwick* v. *Covell*, 151 Mass. 190.
The right to a trade-mark cannot exist as a mere abstract right,
independent of and disconnected from a business.   It is not
property as distinct from, but only as incident to the business.
It cannot be transferred except with the business, may be sold
with it, and ordinarily passes with it.   *Cigar-Makers' Protective
Union* v. *Conhaim*, 40 Minn. 243.

   In the case last cited, the allegations of the bill were appar-
ently the same as those in the case at bar, and the bill was brought
by certain persons, members of the Cigar Makers' International
Union through their membership in one of the local unions which
composed the larger body.   It appeared from the complaint, that
a device claimed to be a trade-mark, but in its form rather an
advertisement, had been adopted by the Cigar Makers' Interna-

tional Union, which was furnished to all local unions for use on the boxes of cigars made by their members; that the right to use it would continue as long as they were members, and would cease when they ceased to be members; and that a manufacturer could only use it by employing members of the union, and would have no right so to use it if he ceased to employ its members. It did not there appear, nor is it alleged in the case at bar, that either the plaintiffs or any one of the unions was a business corporation, association, or partnership for the purpose of manufacturing and selling, or engaged in the manufacture or sale, of cigars. It was held that the device in question — which in all substantial respects was the same with that here considered — was not a trade-mark, and the right to use it was not property, but a personal privilege. Its object was simply to indicate membership in the union, and to obtain whatever advantage the fact of membership might give its members. They had agreed on a certain device which might be placed on their productions. The right to use such a device was obtained merely by joining the association, and did not at all depend upon whether the person had earned a reputation for the manufacture of the particular article. It was therefore held that it could not be protected as a trade-mark.

For similar reasons, we are of opinion that the label alleged by the bill in the case at bar to have been counterfeited cannot be treated as a trade-mark. However disreputable and dishonest it may be falsely to represent goods made by other persons to have been made by members of the union, upon which subject there can be but one opinion, those who do not carry on any business to which the use of the label is incident, who have not applied it to any vendible commodity which has been placed upon the market in which they deal, or of which they are the owners or manufacturers, cannot maintain a bill to restrain the use by the defendant of the label as a trade-mark. It wants every essential element of such a mark; it does not indicate by what person articles were made, but only membership in a certain association; there is no exclusive use of it, but many persons not connected in business and unknown to each other may use it; its rightful use is not connected with any business; it cannot be transferred with any business, but such use is dependent only on membership in the association.

Upon the question whether labels of this character are valid trade-marks there has been some contrariety of opinion. In *People* v. *Fisher*, 50 Hun, 552, under the New York Penal Code, which does not define a trade-mark in essential particulars differently from the definition usually adopted independently of the statute, it was held that the label was a valid trade-mark; but we are of opinion that it cannot be so treated and considered unless a quite different definition is given to this word from that which it has heretofore received, and quite different conditions from those heretofore recognized are held sufficient to justify proceedings for an injunction against one who dishonestly seeks to make a market for his wares by advertisements thereof which are false and unjustifiable. Without discussing the rights which a purchaser may have who has been deceived by such an advertisement or label, it is necessary for those who claim that their right of property in a trade-mark has been invaded to show that they are in some way, by themselves or with others, the owners thereof by reason of some business which they are transacting together and to which its use is incident, and that it is not merely a personal privilege, which they possess as members of a particular association of wide extent and embracing many persons of varied interest, to advertise, or have advertised by those by whom they are employed, the articles made by them as being made by members of such association.

It is urged by the plaintiffs, even if the label in question cannot be considered technically a trade-mark, that where trade-marks have not been infringed courts of equity have granted injunctions against the use on various goods of certain marks, wrappers, and labels when there appeared to be a design to deceive the public by concealing the true origin of the goods, and to make it appear that they were the goods of another. *Croft* v. *Day*, 7 Beav. 84. *McLean* v. *Fleming*, 96 U. S. 245. *Brown Chemical Co.* v. *Myer*, 31 Fed. Rep. 453. *Thomson* v. *Winchester*, 19 Pick. 214. We have no occasion to question this principle, or the authorities by which it has been sustained. It will be found that, where under such circumstances an injunction has been granted or an action maintained, it has been at the instance of one who was himself a manufacturer, dealer in, or owner of the articles which were fraudulently represented by the counterfeited

labels, wrappers, or advertisements to be his. In such case, the fraud complained of would have a natural and inevitable tendency to lessen the sales, affect the reputation of the articles manufactured or dealt in, and injure the business of the complainant, and would thus afford him a ground for relief by reason of the special and peculiar damage which he would sustain, or to which he might be exposed.

The plaintiffs show by their bill that they have a right to use the label in question, and that it is a valuable privilege; but although they aver that they have suffered loss by the use of it by the defendant, they do not show that any business which they pursue has been affected, or that they can have sustained any definite loss or any injury, except that which must be extremely remote and purely speculative.

In *Carson* v. *Ury*, 39 Fed. Rep. 777, it was held that a union label — answering in all respects to the one annexed to the plaintiffs' bill, and there averred to have been counterfeited by the defendant — did not answer to the definition ordinarily given of a technical trade-mark, because it did not indicate with any degree of certainty by what particular person or firm the cigars were manufactured to which it might be affixed, or serve to distinguish the goods of one cigar manufacturer from another, and also because the complainant did not appear to have any vendible interest in the label, but merely a right to use it so long, and only so long, as he might remain a member of the union. In all these respects it lacked the characteristics of a valid trademark. In that case, however, the complainant had averred himself to be a manufacturer of cigars entitled to use the union label, who had used and was actually using it on the cigars manufactured by him, thus guaranteeing the character and quality of his cigars, that he had made profits thereby, and that he had been greatly injured and was liable to be greatly injured by the defendant, who had prepared for sale counterfeit labels in the similitude of those which he had used, and was entitled to use. It was there deemed that the cases of *Cigar-Makers' Protective Union* v. *Conhaim*, and *Schneider* v. *Williams*, *ubi supra*, were distinguishable in this: that in those cases the bills were framed upon the theory that the label was a technical trademark, and as such the property of all the members of the union,

and that any one or more members of the union might maintain a suit to restrain any unauthorized person from using the label, whether they were themselves engaged in the manufacture and sale of cigars on their own account or not. It was deemed, therefore, properly to have been held in those cases that the plaintiffs could not be considered to have such a property in the label that they could maintain a bill upon the ground that they were injuriously affected by the fraudulent acts complained of, while in the case then before the court the complainant had averred himself to be a manufacturer of cigars, who had built up a profitable trade and business, which business was liable to be and was damaged by the fraudulent acts complained of.

In the case at bar, there is no allegation that the plaintiffs are themselves, on their own account or with others, manufacturers or dealers in cigars as a business, or even persons actually employed by others in their sale or manufacture, or that the union of which they are members and officers is engaged in any business of that description. They do not by their bill show that they apply or have applied this label to any vendible commodity of which they are the owners, or which they manufacture for the market or place thereon for sale, or in which they deal. Where an association such as the Cigar Makers' Union, embracing many members and many divisions as subordinate unions, has adopted a symbol or device to be used on boxes of cigars made by its members, such device or symbol not indicating by whom the cigars are made, - but only that they are made by some of the members of the union, and where the right to use the device or symbol belongs equally to all the members, and continues only while they are members, a bill cannot be maintained by individual members or officers of such association to restrain others wrongfully and fraudulently using such device or symbol from so doing. Any injury to such members or officers is not direct or immediate, nor does it affect them in any business which in some form they conduct. It is upon this ground that such invasions of that which has been held to be property have heretofore been restrained.

Whether, if the bill had contained allegations similar to those found in the case of *Carson* v. *Ury, ubi supra,* it might have been maintained, we have no occasion now to consider.

*Bill dismissed.*