### KRONTHAL WATERS, Limited, v. BECKER.

(Circuit Court, E. D. Pennsylvania. April 8, 1905.)

No. 11.

1. UNFAIR COMPETITION—DISTINCTIVE DRESSING—TRANSFER OF RIGHT BY SALE OF BUSINESS AND GOOD WILL.

Although the name under which an article is sold may be one which cannot be appropriated as a technical trade-mark, yet where it has been used for many years in connection with a style of package and labels which together constitute a distinctive dressing for the article, by which it has become well known to the trade and to consumers, the right to the exclusive use of such dressing is one which passes with the sale of the assets and good will of the business, and in which the purchaser is entitled to protection against a fraudulent imitation.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trade-Marks and Trade-Names, § 98.

. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper, 30 C. C. A. 376.]

2. SAME—IMITATION OF DRESSING.

Complainant and its predecessors in ownership have for many years bottled and sold the waters of a well-known mineral spring in Germany

under the name "Blue Label," using therefor a uniform and distinctive dressing consisting of a green bottle having thereon a blue neck label of peculiar shape, bearing the words "Blue Label," and a body label containing an elliptical blue panel with white lettering surrounded by a white field with blue lettering. Such water became widely known throughout the United States under the name of "Blue Label Mineral Water." Defendant commenced the bottling and sale of a different water, using bottles of the same shape, size, and color, having thereon neck and body labels of the same shape size, style, and colors, but having different words thereon, the resemblances between the two as a whole being much more noticeable to a person of ordinary intelligence and observation than the differences, and such as were calculated and evidently intended to deceive ordinary purchasers. *Held,* that such simulation of complainant's dressing, aside from any question of trade-mark or copyright of labels, constituted unfair competition, against which complainant was entitled to protection by injunction.

In Equity. Suit for unfair competition in trade. On demurrer to bill and motion for preliminary injunction.

Howson & Howson, for complainant.

James H. Wolfe, Walter C. Pusey, and Joshua Pusey, for respondent.

HOLLAND, District Judge. A bill in equity is filed and a motion for a preliminary injunction made to restrain unfair competition in trade alleged to be carried on by the defendant in the use of a bottle and dressing for a mineral water so closely resembling that of the complainant that the imitation is a fraud not only upon complainant, but upon the public. A demurrer was filed to the bill, which was argued together with the motion for a preliminary injunction, and both questions will therefore be disposed of in this opinion.

The facts necessary to a complete understanding of both questions are as follows:

(1) Long prior to 1885, Ernst von Eckardstein, a subject of Germany, was the owner of a natural mineral spring, known by the name of "Wilhelms Quelle," located at Kronthal, Prussia; was engaged in bottling mineral water from this spring, and selling it to the public as blue label mineral water, in bottles of a certain shape, green in color, upon which there has been uniformly arranged upon the neck of each a label with the words "Blue Label" in white upon a blue back ground. There is also affixed to each bottle a body label, with a certain characteristic arrangement of colors, type, and panels, and particularly an elliptically shaped blue center panel, in which are written words and sentences in white; and this panel is surrounded by a field of white, containing sentences and words in blue letters. This dressing of complainant's blue label mineral water has been used for a great number of years. On October 10, 1898, Ernst von Eckardstein transferred "all the good will of the business so carried on by him, * * * together with all trade-marks and labels used therein," etc., to the Kronthal Company, Limited, and this company, on the 15th day of November, 1900, conveyed and assigned unto the complainant company "all and singular the property and assets * * * and the good will

of the business of the Kronthal Company, Limited," and the complainant company has bottled and sold this mineral water in bottles and dressing of the same kind since that time, with the exception that the body label has been made somewhat larger.

(2) Defendant, in the year 1904, began the use of bottles of the same shape, size, and color; neck and body labels of the same color, excepting the blue is of a slightly deeper shade; same style panel; and same color and arrangement of letters, with, however, the use of different words. The resemblance between the complainant's and defendant's bottle of mineral water when prepared for sale is very striking, and much more conspicuous than the differences.

(3) The bill recites that in the year 1889 the body label of the complainant was registered in the United States Patent Office as a label for use in connection with the bottling and sale of its mineral water, and on or about the 27th day of August, 1895, the name "Blue Label" was registered in the United States Patent Office as a trade-mark for this mineral water, both of which have been used continuously since their adoption and registration as neck and body labels. So that by reason of the constant use by the complainant and its predecessors of this dressing in connection with the sale of this mineral water, it has become known to the trade and consumer throughout the United States as "Blue Label Mineral Water."

The bill avers, with other facts, by way of inducement, that the defendant's dressing is an infringement of complainant's trade-mark and registered label, but the injury of which plaintiff complains is unfair competition, which is set forth in the bill as follows:

"Said mineral water is by reason of your orator's and its predecessor's extensive and constant use in their advertisements and as a trade-mark upon the bottles of the name 'Blue Label' known throughout the United States to dealers, wholesale and retail, and to consumers, by said name 'Blue Label,' or as 'Blue Label Mineral Water.' The words 'Blue Label' mean to the trade and to the public generally the mineral water bottled and sold by your orator. Furthermore your orator shows unto your honors that by reason of the continuous, uniform, and uninterrupted use by your orator and its predecessors without change during the past fifteen years both in the United States and abroad of their distinctive style of package or dress, to wit, the aforesaid quart bottle green in color, and of the shape shown by exhibit 'Complainant's Bottle and Labels,' having thereon the characteristic neck label and body label heretofore described and also shown in said exhibit, said distinctive package has become known to the trade and consumer both in the United States and abroad as your orator's, and indicates to the trade and consumer mineral water issued by the aforesaid spring Wilhelms Quelle, and bottled and placed upon the market by your orator and its predecessors. The general appearance of the package aforesaid, as shown by exhibit 'Complainant's Bottle and Labels,' is a badge long recognized by the trade and consumers, pointing to your orator as the origin of its said mineral water product. Your orator shows unto your honors that the simulation by defendant of your orator's labels and distinctive style of package was and is intended and calculated to deceive purchasers into the belief that defendant's goods are the goods of your orator, and to enable defendant to pass off his goods as and for your orator's; and your orator is informed and believes, and therefore charges, that many persons have thus been deceived and induced to purchase the defendant's goods under the belief that they were getting the well-known prod-

ucts of your orator. Your orator further shows unto your honors that it has within the present year come to the knowledge of your orator that said defendant is selling his aforesaid mineral water under the name 'Blue Label'; that is to say when purchasers ask defendant or his agents for Blue Label mineral water, thereby meaning the product of your orator, defendant and his agents are accustomed to hand said purchaser the aforesaid defendant's product, with the intent and result of deceiving said purchasers into the belief that they are getting your orator's product."

The prayer of the bill is for a provisional or preliminary injunction to restrain the defendant from putting up in bottles of a general form, shape, and color of complainant's bottles, and marked with labels of the form, device, and in the manner complained of, or in any other form or device which shall be a colorable imitation of complainant's bottled mineral water, and from simulating any of complainant's trade-marks or labels, and from passing off in any manner whatever, or attempting to pass off, mineral water or other beverage not bottled by complainant as complainant's product. Other relief asked for in the bill will not be considered, as counsel for the complainant has agreed that it would be more appropriate to consider the other matters of relief upon final hearing.

The demurrer to the bill is: (1) That complainant has failed to show title to the alleged trade-marks and labels. (2) That the bill seeks an injunction for an infringement of trade-mark, and also of a certain alleged registered label, and that the two cannot properly be joined, as the first cause of action is cognizable under the law covering trade-marks, and the second named under the statutes covering copyrights. (3) That the bill does not set forth that the complainant complied with certain prerequisites prescribed by the United States statutes prior to registration of labels.

1. Where a trade-mark is applied to a commercial article to indicate its origin at a particular manufactory or place of production, or its ownership or origin with a particular manufacturer or dealer, and not to indicate that such article is produced by the peculiar skill of any particular individual, the trade-mark is transferable, and will pass with the manufactory or place of production or with the business in which it is used, to a successor to the original proprietor. Trade-marks of this character constitute a part of the assets of an individual, firm, or corporation, and pass under a sale of the "assets and good will" of the business, whether specially mentioned or not. Laughman's Appeal, 128 Pa. 1, 18 Atl. 415, 5 L. R. A. 599; Morgan v. Rogers (C. C.) 19 Fed. 596; Paul on Trade-Marks, § 116. But it is contended that "Blue Label" cannot be appropriated as a trade-mark, and therefore cannot be assigned; but without regard to the question as to whether "Blue Label," technically speaking, can be a trade-mark, the complainant's purchase and use of this neck and body label in combination, forming a well-known bottle dressing for this mineral water, indicating, as alleged, that it is a blue label mineral water bottled from Wilhelms Quelle, a well known spring in Germany, gives it whatever rights the complainant's predecessors had in and to the use of the alleged trade-mark and label under the assignment to it of the "assets and good will," so as to enable it to restrain the de-

fendant from fraudulently imitating this dressing on an entirely different kind of mineral water for the purpose of deceiving the consumer. A manufacturer or vendor may have no trade-mark, and yet may, by usage for a great number of years, of a particular form, color, and general appearance of labels and manner of arranging the general dressing of an article so as to cause them to be known by the public from their general appearance, acquire such a right in the indicia thus adopted and used as to enable him to assign it with the article of merchandise upon which it has been used, and the assignee may restrain others from fraudulently imitating such dressing for the purpose of deceiving the public and enabling another's goods to be palmed off on the public as his.

2 and 3. The second and third grounds of demurrer are overruled for the reason that the suit is for the purpose of restraining unfair competition by a fraudulent imitation of the bottles and dressing of the complainant, and not for the purpose of restraining an infringement of a trade-mark or a registered label, although the bill claims a registered trade-mark and a registered label. In order to sustain a bill for unfair competition, it is not necessary to establish an ownership in a trade-mark, or the proper registration of the label. "Irrespective of the technical question of trade-mark, the defendant has no right to dress his bottles up in such manner as to deceive an intended purchaser, and induce him to believe he is buying those of the complainant." This is the charge made in this bill for which the restraining order is asked, and, if the facts establish this allegation, plaintiff is entitled to be protected. Coates v. Merrick Thread Co., 149 U. S. 562, 13 Sup. Ct. 966, 1 L. R. A. 616; Putman Nail Co. v. Bennett (C. C.) 43 Fed. 800. The question on the motion for a preliminary injunction is whether, taking the defendant's bottle as dressed up for sale, with the neck and body labels as a whole, it so far copies or resembles the bottle and dressing of the complainant that a person of ordinary intelligence would be misled into buying the one supposing that he was buying the other. And in such case it has been said that "one must be guided very largely by the judgment one forms from the use of one's own eyesight." Elaborate descriptions of the points of resemblance or those of difference are, taken by themselves alone, always unsatisfactory. The eye, at a glance, takes in the whole of one exhibit and the whole of another, and the comparison thus made of the two is the surest and the only satisfactory way of satisfying the judgment as to the existence of the alleged deceptive imitation. Lorillard Co. v. Peper, 86 Fed. 956, 30 C. C. A. 496. With an exhibit of a bottle both of the complainant and defendant before me, dressed up in the style used by both, ready for sale, I can, of course, easily distinguish one from the other; but the resemblance between the two is so close that the consumer, without close attention, could easily be deceived into accepting the mineral water of the defendant when he intended to purchase that of the complainant. The bottles are of the same shape, size, and color; the neck labels are the same in size and color, placed upon the bottle at the same place and same angle; the body labels are the

same in color, each containing an elliptically shaped panel of blue, with words and sentences of white letters; the white field in both body labels surrounding the blue panel contains words and sentences of blue letters, similarly arranged, and same style and similar shape. The differences are found in the use of different words and sentences on the labels, and the blue of the defendant's dressing is of a slightly deeper shade. The plaintiff has written on the neck label the words "Blue Label," and the defendant has "Kosmos Springs." These words appear in the body label of defendant at the same place and in the same shape as the words "Wilhelms Quelle" occupied in the complainant's body label. It might be that a consumer who has been accustomed to purchase the Blue Label mineral water in quantity, bottled at the spring known as Wilhelms Quelle in Germany, would detect the difference upon comparison; but in the sale of these waters the purchaser would not likely have both products together, and the great similarity of the two would make him an easy victim to the imposition. Of course, the complainant can have no exclusive use of the blue colors, the shape of the bottle, nor the coloring words or letters upon the body label. These no doubt may all be used fairly by the defendant; but when he arranges his dressing in the use of colors, letters, words, and labels in such a combination as to so closely resemble that of the complainant as to be calculated to deceive an ordinarily careful and intelligent person, he should be restrained. Coates v. Merrick Thread Co., supra; Scheuer v. Miller, 74 Fed. 225, 20 C. C. A. 161; Wellman Co. & Dwire Tobacco Works v. Ware (C. C.) 46 Fed. 289; Carroll v. Ertheiler (C. C.) 1 Fed. 688; Bernheimer v. Ross (C. C.) 73 Fed. 203; Enoch Morgan Sons & Co. v. Whittin-Coburn Co. (C. C.) 118 Fed. 661; McLean v. Fleming, 96 U. S. 254, 24 L. Ed. 828; Von Mumm v. Wittemann (C. C.) 85 Fed. 966. The following remarks, from a case recently decided are very appropriate in connection with the facts in this case:

"Inspection of the labels must carry conviction to any unbiased and unprejudiced mind that the later label was prepared by some one who had seen the earlier one, and that it was designed not to differentiate the goods to which it was affixed, but to simulate a resemblance to complainant's goods sufficiently strong to mislead the consumer, although containing variations sufficient to argue about should the designer be brought into court. This is the usual artifice of the unfair trader." Collinsplatt v. Finlayson (C. C.) 88 Fed. 693.

In another recent case the same court says:

"There are as usual a number of minor differences between the form and the dress of the two packages, which are expatiated upon in the affidavits and the brief: but no one can look at both packages without perceiving that there are strong resemblances, which could easily have been avoided had there been an honest effort to give defendants' goods a distinctive dress." National Biscuit Co. v. Baker (C. C.) 95 Fed. 135.

The demurrer is overruled, and a preliminary injunction awarded. Let a decree be drawn in accordance with this opinion.