DETROIT CREAMERY CO. *v.* VELVET BRAND ICE CREAM CO.

1. TRADE-MARKS AND TRADE NAMES—PARTNERSHIP.

One of a partnership who originated a trade name to be adopted by and used by the firm of which he was a partner had no title in the device as a trade-mark; it was not property except as it became so from association with and as a part of the firm business.

2. SAME—ASSIGNMENT.

Trade-marks, as such, cannot be assigned separately from the business to which they have become attached.

3. SAME—LICENSE—TRANSFER.

Where the trade name or mark "Velvet Brand" had been connected by long association with the business of a firm, a license made by one of the partners after the partnership had sold its business which would tend to deceive the public or operate as a fraud on persons accustomed to deal with the manufacturers was void; a trade-mark being required to indicate the ownership and origin of the goods.

Appeal from Wayne; Mandell, J. Submitted April 13, 1915. (Docket No. 70.) Decided July 23, 1915.

Bill by the Detroit Creamery Company against the Velvet Brand Ice Cream Company and others for an injunction, etc. From a decree for complainant, defendants appeal. Affirmed.

*George W. Bates* (*Geer, Williams, Martin & Butler,* of counsel), for appellants.

*Dennis B. Hayes* and *Miller, Smith, Canfield, Paddock & Perry,* for appellee.

KUHN, J. This is a suit to enjoin the use by the defendants of the trade-mark "Velvet Brand" in the manufacture and sale of ice cream. The name was originally adopted and used by the firm of A. Easter & Son, and complainant bases its right to it on a transfer by bill of sale from that firm to the complainant, at the time of its organization in 1900, of all its stock in trade, good will, and everything pertaining to its business. From that until shortly before the commencement of this litigation, the complainant used the name continuously in the sale of ice cream, and by a large expenditure of money in advertising and by extensive sales has identified it with its goods and made it a valuable asset in its business.

The firm of A. Easter & Son was founded in 1894, when Alfred Easter, who had for a number of years before manufactured and sold ice cream in connection with a milk and cream business, took his son Ephraim into partnership with him and gave him a one-fourth interest in the business. In 1898 Ephraim originated the trade-mark while in conversation with an advertising solicitor, and proposed its use in advertising the firm product. Alfred Easter at first refused to authorize its use, but later consented; and it was used in the firm advertising, which was paid for by the firm. The trade-mark proved to be a great success, so much so that the firm was "swamped" with orders. From June,

1898, to December, 1899, all ice cream manufactured by the firm was sold under the name of "Velvet Brand Ice Cream," and the name was not used by any one else.

Late in 1899 Alfred Easter and several other dealers organized the Detroit Creamery Company, put in their businesses and additional capital, and secured the investment of outside capital. The new company commenced business in January, 1900. The contract of sale from A. Easter & Son transferred to the Detroit Creamery Company all the stock in trade and the good will of the business and everything pertaining to said business, and bound Alfred Easter & Son, severally and jointly, not to engage in the business in Detroit and vicinity for a period of ten years. The consideration was $70,000, paid in stock, cash, and assumption of indebtedness. Ephraim received $7,800 cash, as arranged between him and his father. That was for his 25 per cent. of the firm business. The sale of the firm business was conducted entirely by Alfred Easter, but they both signed the bill of sale, severally and as a firm. The original bill of sale was lost, and, according to the assertion of Ephraim, a clause was inserted therein by him, giving permission to the Detroit Creamery Company to use the words "Velvet Brand Ice Cream" for a period of ten years, ending December 31, 1909. This was done for the purpose of reserving in himself ownership of the trade-mark, which he declared he never intended to part with. Of this Alfred Easter claims to have no recollection. He became the manager of the new company, and still holds that office. Ephraim was employed in the office of the company from 1901 to 1913, with a short intermission.

In April, 1914, the defendants organized the Velvet Brand Ice Cream Company, and announced by advertisement that they would commence an ice cream business under that name in Detroit on or before June 1,

1914. The complainant protested in writing against such use of their name, but the defendants began doing business in July, and very soon thereafter the complainant commenced suit.

After hearing the case, the chancellor entered a decree that the complainant was sole and exclusive owner of the trade-mark, and that the defendants be perpetually enjoined from using it. From this decree the defendants appeal.

It may be conceded, for the purposes of the discussion of the questions here involved, that Ephraim B. Easter was the originator of the idea of having the firm of which he was a member use the trade-mark here in question. But it does not follow, as a matter of law, that this would make him the owner thereof in the slightest degree. It is the well-established law of trade-marks that a trade-mark does not exist as an extrinsic thing, and therefor it is not in any sense property when so considered. Its existence as property and its value as such is created only when it has become associated with and is a part of the business with which it has been connected. It becomes endowed with attributes of property when affixed to merchandise, because, when so affixed, it represents the good will of the producer of the merchandise to which it is affixed, and its value consists of the extent that the information it conveys or implies is of value. This seems to be sustained by the entire weight of authority in trade-mark law. See note to *Falk* v. *Trading Co.*, 180 N. Y. 445 (1 L. R. A. [N. S.] 704) ; Paul on Trade-Marks, § 92; Rogers on Good Will, Trade-Marks, and Unfair Trading, p. 99; *Williams* v. *Farrand*, 88 Mich. 473 (50 N. W. 446, 14 L. R. A. 161) ; *Derringer* v. *Plate*, 29 Cal. 292 (87 Am. Dec. 170) ; *Atlantic Milling Co.* v. *Robinson* (C. C.), 20 Fed. 217. Mr. Justice Holmes, in note B-x, to 2 Kent's Commentaries, *366 (13th Ed. p. 506; 14th Ed. p. 592), says:

"So it would seem that, while a person may transfer the right to use a trade-mark along with the business to which it relates, it cannot be separately sold. *Kidd* v. *Johnson,* 100 U. S. 617; *Carmichael* v. *Latimer,* 11 R. I. 395 (23 Am. Rep. 481). It would seem a sufficient reason for this that; the mark having come to designate a certain manufacture of goods, it would be a fraud on the public to allow it to be used on goods not of that manufacture."

The record discloses that the Detroit Creamery Company, complainant herein, acquired all the assets, good will, and everything pertaining to the business of A. Easter & Son as a going concern in January, 1900. But it is the contention of the defendants that the use of the trade-mark or trade-name on the part of the complainant was to be limited to a period of 10 years from that date. It appears, however, that the use of this name was confined for a period of 14 years to the product of the complainant company, and it only had value as such in connection with such product. It has been universally held that a trade-mark, as such cannot be assigned separately and distinct from the property to which it has been attached, and likewise the rule has been laid down that a naked license to use a trade-mark is of no more validity than an assignment thereof. Both are void. 38 Cyc. p. 876. The rule is thus stated in 28 Am. & Eng. Enc. Law (2d Ed.), p. 405:

"As a general rule, a valid license cannot be granted for the use of a trade-mark. This rule is based upon the principle that a trade-mark must indicate the ownership and origin of the goods, and having once become associated with the product of an individual or a person, to permit the use of the same mark by several persons, even by authority of the owner, would be to authorize a fraud and deception upon the public by representing goods made by the licensee as emanating from the original adopter of the mark."

It necessarily follows as a corollary from this that it would be impossible to transfer the property with

which a trade-mark was connected and retain title in the trade-mark separate and distinct from the property. An attempt to use such trade-mark in connection with some other business than that to which it was attached would be clearly, under the reasoning above set forth, a fraud and deception upon the public as representing goods as emanating from the company which originally adopted the mark, and by its use gave it its value in connection with its business.

We think it is clear that Ephraim B. Easter never had any title or ownership in the trade-mark in question separate and distinct from his ownership in the partnership property which was conveyed to the complainant company; and, it being established beyond question that the trade-mark was necessarily connected with and was a part of the good will of the business of said partnership which was transferred to the complainant company, it follows that it was legally impossible for him to retain ownership in something which did not have any separate and distinct legal existence.

In *Royal Baking Powder Co.* v. *Raymond* (C. C.), 70 Fed. 376, Showalter, J., said:

"In Allan's Law of Good Will (page 26) it is said that 'a trade-mark cannot exist apart from a business.' It may be more accurate to say that a trade-mark cannot exist apart from the good will of a business, since what is known as the good will may persist for a time after such business has in fact ceased. A manufacturing establishment, for instance, may, with all its machinery and appliances and its store of products, be destroyed by fire, and a year or two may pass before such manufactory is rebuilt, and the business started again; but, when started, the old customers, in part at least, will resume trade connections. Here the business stops for a time, but the good will involving the trade-marks remains a property more or less valuable during the interval of cessation. I can conceive such a stoppage of business by accident or design, even for a series of years, where the good will, including the trade-marks, may still be found extant; that is to say,

valuable, upon resumption. But when it is not shown in some satisfactory way that the trade reputation of a suspended business continues to have value (can be exchanged or sold, for instance, for a price), a court cannot say that a good will remains; in other words, that there still attaches to the old proprietor any dominion over, or property right in, a mark which may once have had, but which no longer has, significance for him in the world of trade."

See, also, *Bulte* v. *Igleheart Bros.*, 137 Fed. 492, 498 70 C. C. A. 76), and Hopkins, Law of Trade-Marks, where it is said:

"Inasmuch as there can be no title in a trade-mark apart from the good will of the business in which it is used, it follows that, in an assignment of the business and good will of the owner of the mark, the title to the trade-mark, without being specially mentioned, passes to the assignee." Section 15.

The attempt on the part of Ephraim Easter to convey or license to the defendant the bare words "Velvet Brand" or "Velvet Brand Ice Cream," wholly apart from the good will, goods, and business in which they had originated and which they had been continuously associated with since 1898, was void. It was an attempt to lead the public to believe that it was obtaining from the new company the old brand of ice cream, the reputation of which had been created and established by the complainant company.

We are of the opinion that the chancellor who heard the case arrived at a proper conclusion in determining that the complainant company was the sole and exclusive owner of the trade-mark in question and enjoining the defendants from the use of it.

The decree is therefore affirmed.

BROOKE, C. J., and STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.