LEWIS *v.* TRINKLEIN.

*In re* DISSOLUTION OF AIR-O-CEL INDUSTRIES, INC.

TRADE MARKS AND TRADE NAMES—INJUNCTION—EQUALLY DIVIDED COURT.

Decree in favor of purchaser from corporation's receiver of advertising equipment, patents and registered trade marks enjoining use of registered trade name by defendant, former president of the corporation, and a new corporation, owned by him individually, is affirmed by an equally divided court.

Appeal from Wayne; Murphy (George B.), J. Submitted October 20, 1942. (Docket No. 70, Calendar No. 42,101.) Decided April 6, 1943. Rehearing denied June 7, 1943.

Petition by Arthur G. Lewis against Edwin J. Trinklein and Air-O-Cel Products Company, a Michigan corporation, for order to show cause why defendants should not desist from using a trade name and why defendant corporation should not be required to change its name. From an order of circuit court granting such petition, defendants appeal. Affirmed by equally divided court.

*John McNeil Burns* (*Dale H. Fillmore,* of counsel), for plaintiff.

*Lewis A. Stoneman* (*Herbert J. Pevos,* of counsel), for defendants.

BOYLES, C. J. The question for decision is whether the appellee (Arthur G. Lewis) has the exclusive right to use the registered trade mark name "Air-O-Cel" as against the defendant Edwin J. Trinklein and his individually-owned corporation.

In 1928 Trinklein and associates incorporated Air-O-Cel Industries, Inc., to engage in the business of selling and installing certain insulating material under the registered trade name "Air-O-Cel." Trinklein was president, director, and, with his brother, a majority stockholder in the corporation. The corporation met with business difficulties and on October 7, 1941, Trinklein, with the other directors, filed a petition in Wayne county circuit court for voluntary dissolution of the corporation. On filing the petition, Trinklein was appointed temporary receiver, with authority to take possession of the assets and continue the business. About two weeks later, on petition of intervening creditors, an order was entered by the court removing Trinklein as temporary receiver and appointing one Walter G. Wiseman in his stead with similar authority. On November 28, 1941, an order was entered dissolving the corporation, appointing Wiseman permanent receiver and directing him to liquidate the business as a going concern. On January 24, 1942, the court entered an order directing the receiver to discontinue the business and to liquidate the assets, which the receiver proceeded to do. A public sale of the assets was held by the receiver on February 11, 1942. The assets were first offered in bulk, then offered in 42 separate parcels. The bids by parcels being larger, two days later (February 13th) the receiver filed a report of sale recommending that the sale by parcels be confirmed, and on the same day the court entered an order confirming the sale by parcels.

Plaintiff Lewis was the high bidder for the following parcel:

"ADVERTISING EQUIPMENT AND GOOD WILL
"3 large neon signs in whse.
"3 large neon signs on jobs

"1 small convention neon sign
"1 builders show advertising panel. Samples, advertising and vapormeters
"PATENTS AND TRADE MARKS.
"1 thermos bottle trade mark #281-080 U. S.
"1 trade mark Air-O-Cell #269206 U. S.
"1 U. S. #2098554
"1 U. S. #1924515
"1 Canadian patent #311466"

In the subsequent proceedings plaintiff showed that the auctioneer at the sale offered and sold this parcel "together with advertising material, stationery, unfilled orders and the rights to the telephone number of Air-O-Cel Industries, Inc.''

Lewis paid the receiver for this property. Trinklein had been the unsuccessful (next to highest) bidder for this parcel.

The sale was held on February 11th, confirmed on February 13th. On the latter date Trinklein filed with the State corporation and securities commission and with the county clerk of Wayne county an amendment to the articles of an inactive real estate corporation, "Liddesdale Holding Company," of which Trinklein was sole owner, changing its name to "Air-O-Cel Products Company." When Lewis attempted to file with the county clerk of Wayne county a certificate of doing business using the name "Air-O-Cel," it was refused on the ground that Trinklein had already filed the same name in the amendment to his articles of incorporation.

On March 9th, Lewis filed a sworn petition with the court in the pending receivership proceeding, reciting the foregoing facts, alleging that he had been deprived of the rights purchased by him from the receiver and asking for an order requiring Trinklein and the corporate defendant herein to show cause why they should not be restrained from using the

name "Air-O-Cel." On March 23d, Trinklein and the other defendant filed a sworn answer denying that plaintiff herein had the right to the name, together with a motion to dismiss plaintiff's petition, which motion was denied. Lewis filed several affidavits, including those of Wiseman, the receiver; Laufenberg, a former employee of Air-O-Cel Industries, Inc.; Reinke, a former director of Air-O-Cel Industries, Inc., who had originated and patented the product and registered the trade name "Air-O-Cel;" all of which fully substantiated the allegations in plaintiff's petition. Trinklein filed an affidavit in opposition. No testimony was taken. On April 27, 1942, the circuit judge entered an order in the proceedings, stating that the matter had been heard on the sworn petition and answer, the affidavits in support thereof, and the undisputed statements of counsel made at the hearing, finding that the name "Air-O-Cel," together with the advertising signs, patents and registered trade marks purchased from the receiver by Lewis were of distinct value, that the completion of the sale and transfer of assets of the receivership had been interfered with, and that the assets sold to Lewis were thus rendered worthless by the acts of Trinklein. This was held to be an unlawful interference with the orders of the court in carrying out the receivership and liquidation. The court ordered the defendants to refrain from using the name "Air-O-Cel." From this order, defendants appeal.

The contest thus squares away as to who has the right to use the name "Air-O-Cel," as between Lewis and the defendants. That it has a definite value as a trade name is beyond doubt. In 1939, in suits started and brought to a successful conclusion by Trinklein, others had been enjoined from using Trinklein's registered trade name "Air-O-Cel."

Trinklein had filed sworn bills of complaint stating that he had spent large sums of money in advertising and bringing the name "Air-O-Cel" before the public as a trade name, that it had become synonymous with the term insulation, had acquired a high reputation with the public, and had considerable value.

We find no merit in defendants' claim that Lewis was not properly a party before the court, and that the court did not have jurisdiction to hear the matter and enter the order. The subject matter was before the court in the receivership proceedings. Trinklein was actually a party before the court by filing the original petition for dissolution and appointment of a receiver. Defendant Liddesdale Holding Company, now known as Air-O-Cel Products Company, a corporation wholly owned by Trinklein, was brought before the court in the order to show cause. Lewis became a party to the proceeding when he became a successful bidder, contracted to purchase a part of the assets from the receiver, the sale being confirmed and Lewis having paid the receiver for the same. 1 Clark on Receivers (2d Ed.), § 489 (a), p. 669, states that a bidder and purchaser at receiver's sale "becomes a party to the cause from the time he enters into a contract of purchase," citing *Rice* v. *Ahlman* (1912), 70 Wash. 12 (126 Pac. 66). In the latter case, the court said:

"A second contention is that no process was served upon Beck making him a party to the action, and that the court could not acquire jurisdiction over him by the service of the show cause order. The show cause order was not issued nor required to subject Beck to the jurisdiction of the court. He became a party and subjected himself to the jurisdiction of the court when he became a purchaser at

the receiver's sale. This was a judicial sale made under direct order from the court. The jurisdiction of the court over purchasers at a judicial sale is well settled. From the time he enters into a contract of purchase at a judicial sale, the purchaser becomes a party to the action by voluntarily submitting himself to the jurisdiction of the court, and he may be compelled to comply with his bid by rule in the original case," citing a large number of cases.

In 53 C. J. p. 221, as to the jurisdiction over the purchaser, we find the following language:

"By virtue of being a party to the receiver's sale, a purchaser submits himself to the jurisdiction of the court under whose order the sale is made."

Defendants claim that the court could not enter the order appealed from, based on the sworn petition and sworn answer and affidavits, without supporting testimony. There is no merit to this claim. Counsel could have requested the taking of proofs or the court could have ordered testimony, within its discretion. 3 Comp. Laws 1929, § 14259 (Stat. Ann. § 27.988). See, also, *Clabaugh* v. *Wayne Circuit Judge*, 228 Mich. 207. This is a petition in a dissolution and receivership matter. Sworn pleadings may have the force of evidence on hearing of motions and petitions. Court Rule No. 23, § 7 (1933).

The gist of appellants' claim seems to be that the court could not restrain Trinklein's wholly-owned corporation, Air-O-Cel Products Company, from using the trade name "Air-O-Cel" as a part of its corporate name. However, the case before us is more than merely a matter of compelling a corporation to refrain from using a name. It was not merely a corporate name, or the good will of an already dissolved corporation, that was sold to Lewis

by the receiver. The right to the use of a registered trade name was sold along with tangible personal property. Upon dissolution of the corporation, its assets were transferred to the receiver. A receiver may take all appropriate steps in law or equity to protect such property. *Pontiac Trust Co.* v. *Newell,* 266 Mich. 490. The case before us is entirely distinguished by its facts from *Grand Rapids Trust Co.* v. *Haney School Furniture Co.,* 221 Mich. 487 (27 A. L. R. 1020), relied upon by defendants. In that case the corporate charter had expired by limitation in 1919. There had been no reorganization under the statute,* the corporation continued *as a body corporate* for three years only for the purpose of suits, closing its affairs, disposing of its property. The corporate name did not survive. Three years later (1922) a receiver for the corporation filed a bill to restrain another from using the corporate name and was denied the relief. The bill showed no exclusive products to which the corporate name had attached a trade meaning. Later use of the name did not interfere with the use of anything the receiver could sell and pass to others. The protection of a registered trade mark was not involved (as in the case at bar) and the decision expressly states that the protection of a trade name extends to the party entitled to use it. A trade name may or may not be identical with the name of a corporation or business.

In the case before us, something more than good will of a dissolved corporation is at stake—the use of a registered trade name. Even good will may be transferred, under exceptional circumstances, with a trade name.

"Aside from exceptional circumstances as, for example, trade marks and trade names, *Tennant*

* See 3 Comp. Laws 1915, § 11335; Act No. 84, pt. 1, chap. 4, § 6, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 9053 [32]).—REPORTER.

v. *Dunlop,* 97 Va. 234 (33 S. E. 620), the rule, as stated in 28 C. J. p. 731, cited by plaintiff, is:

" 'Good will exists as property merely as an incident to other property rights and is not susceptible of being owned and disposed of separately and apart from the property right to which it is incident. Good will may be attached to the particular place where the business is conducted; it is not, however, necessarily dependent upon locality, and it may adhere to some other principal thing, such as the reputation acquired by an established business, the tangible assets of a trade, the right to use a particular name, trade mark, or valuable trade secret.' " *Maitland* v. *Slutsky,* 281 Mich. 669, 673.

This case involves not merely the good will of a dissolved corporation and the use of a registered trade name but also the transferability of the right to use that trade name. The purpose and value of a trade name lies in the fact that it designates something to the public. In *Detroit Creamery Co.* v. *Velvet Brand Ice Cream Co.* (syllabus), 187 Mich. 312, this court held:

"Where the trade name or mark 'Velvet Brand' had been connected by long association with the business of a firm, a license made by one of the partners after the partnership had sold its business which would tend to deceive the public or operate as a fraud on persons accustomed to deal with the manufacturers was void; a trade mark being required to indicate the ownership and origin of the goods."

The essential point is, that when a name becomes so familiar to the public that it attains economic value, or becomes known as a trade name, those facts exist because the public has come to attach some significance to the name and has come to rely upon something designated by the name. If that

something is reliability, courtesy in dealing with customers, good credit, or other attributes intimately bound up with a certain business organization as such, then for a valid transfer of the name it may be necessary that the entire business be transferred along with it, or at least that enough be transferred to reasonably warrant a finding that the attributes attached to that name by the public have been transferred with it. But when there are exclusive products to which the name has attached a trade meaning, and when the trade or public attaches thereto certain scientific attributes, then to avoid confusion or fraud on the public it should be possible to transfer the name along with the rights to produce those same scientific attributes.

The property sold to plaintiff Lewis had a distinct value aside from the value of the neon signs, advertising panels, samples and other tangible personal property. The registered trade mark "Air-O-Cel" and the United States and Canadian patents sold along with tangible personal property have a value to one intending to continue the business under the trade name. The trade mark, neon signs and other personal property sold to Lewis had a direct connection with the manufacture and sale of the patented article "Air-O-Cel." The neon signs, samples, advertising matter and other personal property obviously connected with the manufacture and sale of the articles had little, if any, value except for use in connection with the article itself. There is evidence in this case indicating that the patents transferred to plaintiff were patents pertaining to the preparation of the products which had come to be known as "Air-O-Cel" products, and there is no showing that any of the assets of the business which were transferred to other persons

were essential to the preparation of those identical products. The other items included in the same parcel with the patents, as well as defendant's haste to have the name acquired by his other corporation immediately after his bid failed, clearly indicate that there was an intent to transfer the right to use the name "Air-O-Cel" along with the other items sold in the parcel.

In the present case, Lewis also purchased United States patents 2098554 and 1924515 and Canadian patent 311466. Defendants' brief admits that the trademark registration of "Air-O-Cel" is as follows:

"Pocket forming elements of pasteboard or other fibrous material for lining and insulating building walls."

This pocket-forming feature is described as "air cells" or "air pockets." It was shown that the name "Air-O-Cel" was not descriptive of the insulating board itself but refers to air pockets between the wall and board. The insulation is provided by these air pockets rather than by the corrugation in the board itself. It was shown that Mr. Reinke, who originated this new method for making and applying insulation material for which he had received the patents hereinbefore stated, also at the same time originated the name "Air-O-Cel" for which he received the certificate of registration. Both letters patent and trade mark were assigned to the Air-O-Cel Industries, Inc. It is a reasonable inference from these facts that the trade mark "Air-O-Cel" was used in the manufacture as set out in the letters patent. The name "Air-O-Cel" had special meaning in the insulation trade. The air pocket insulation distinguished it from the ordinary type of corrugated boxboard.

In *Julian* v. *Hoosier Drill Co.*, 78 Ind. 408, 415, the court said:

"This assignment and transfer (of a patent) carried with it to the assignee the exclusive right to manufacture and sell the grain drill specified in the letters patent. * * * It was a transfer to appellant of the *right* to carry on the business in which Joseph Ingels had been engaged, and in connection with which he had used said trade mark. * * * It was enough if the right to engage in the business was assigned; as incident to the assignment of this right, it was quite competent to assign the right to the trade mark."

The above case (syllabi) further holds:

"Property in the use of a word as a trade mark, to designate manufactured goods, such as the word 'Hoosier,' to distinguish a grain drill, may be acquired by adoption and exclusive use, and, when acquired, the unauthorized use by another of the mark, to designate similar goods, is a wrong which may be compensated by damages, and prevented by injunction.

"A trade mark, used to designate goods manufactured under letters-patent, is assignable with the letters-patent, and the right to damages accrued for infringement is also assignable."

To the same effect, it has been further held that the right to the exclusive use of a word or symbol as a trade mark is inseparable from the right to make and sell the commodity which it has been appropriated to designate. *Atlantic Milling Co.* v. *Robinson,* 20 Fed. 217 (appeal dismissed, *Rowland* v. *Atlantic Milling Co.* [1889], 136 U. S. 648 [10 Sup. Ct. 1073, 34 L. Ed. 549]).

A trade mark is not copyrighted or patented, but is merely registered in the United States patent office. The right of property in a trade mark is a common-law right, merely recognized and preserved

by the trade mark act of congress.* *La Croix* v. *May* (1883), 15 Fed. 236.

"The right to a trade mark exists independently of statute." *Phillips* v. *Hudnut* (1920) (syllabus), 49 App. D. C. 247 (263 Fed. 643).'

"That nothing in this ·act shall prevent, lessen, impeach, or avoid any remedy at law or in equity which any party aggrieved by any wrongful use of any trade mark might have had if the provisions of this act had not been passed." 33 Stat. at L. 730 (see 15 USCA, § 103).

"A trade mark has come to be recognized as a property right of immense and incalculable value, whose proprietor is entitled to the strongest protection at the hands of the proper court." *A. Bourjois & Co.* v. *Katzel* (syllabus), 274 Fed. 856.

"One who has appropriated a trade mark, to distinguish his goods from other similar goods, has a property right ·in it, a right that will be protected by injunction against the infringing party." *Liggett & Myers Tobacco Co.* v. *Sam. Reid Tobacco Co.*, 104 Mo. 53, 60 (15 S. W. 843, 844, 24 Am. St. Rep. 313).

The order restraining defendants from using the name "Air-O-Cel" and from interfering with plaintiff's use thereof is affirmed, with costs to plaintiff.

NORTH, BUTZEL, and SHARPE, JJ., concurred with BOYLES, C. J.

WIEST, J. I cannot concur in the opinion of Mr. Justice BOYLES.

The corporation was dissolved, a receiver was appointed and sale of the assets of the corporation authorized by the court. The sale was made in 42 par-

---

* Act of February 20, 1905, chap. 592; 33 Stat. at L. 724 *et seq.* (15 USCA, § 81 *et seq.*)—REPORTER.

cels and plaintiff Lewis purchased the registered trade names, trade marks, some patents and signs but none of the other physical assets of the corporation.

A trade name exists as an incident of the business in which it was lawfully acquired and with which it remains identified as a mere abstract right, having no reference to any particular property, commodity, or business. It cannot exist separated from the business to which it belongs and with which it is identified; it is not a species of property, and cannot be sold or transferred as such.

"There is no property in a trade mark apart from the business or trade in connection with which it is employed. *United Drug Co.* v. *Rectanus Co.*, 248 U. S. 90, 97 (39 Sup. Ct. 48, 50, 63 L. Ed. 141); *Hanover Milling Co.* v. *Metcalf*, 240 U. S. 403, 413–414 (36 Sup. Ct. 357, 360–361, 60 L. Ed. 713). 'The law of trade marks is but a part of the broader law of unfair competition' (*idem*), the general purpose of which is to prevent one person from passing off his goods or his business as the goods or business of another.

"Whether the name of a corporation is to be regarded as a trade mark, a trade name, or both, is not entirely clear under the decisions. To some extent the two terms overlap, but there is a difference more or less definitely recognized, which is, that, generally speaking, the former is applicable to the vendible commodity to which it is affixed, the latter to a business and its good will." *American Steel Foundries* v. *Robertson*, 269 U. S. 372, 380 (46 Sup. Ct. 160, 162, 70 L. Ed. 317).

My views are expressed in the following quotation from *Children's Bootery* v. *Sutker*, 91 Fla. 60, 69 (107 South. 345, 348, 44 A. L. R. 698):

"The physical elements or assets of a business may not be sold to one and the good will and trade

name thereof to another, for when the good will and trade name is separated from the business to which it applies it is thereby destroyed and cannot thereafter be the proper subject of a sale. As it is sometimes expressed, 'the shadow cannot be separated from the substance.' *In re Jaysee Corset Co.,* 201 Fed. 779; *Rodseth* v. *Northwestern Marble Wks.,* 129 Minn. 472 (152 N. W. 885, Ann. Cas. 1917A, 257); *Weener* v. *Brayton,* 152 Mass. 101 (25 N. E. 46, 8 L. R. A. 640); *Witthaus* v. *Braun & Mattfeldt,* 44 Md. 303 (22 Am. Rep. 44); *The Fair* v. *Jose Morales Co.,* 82 Ill. App. 499; *Seabrook* v. *Grimes,* 107 Md. 410 (68 Atl. 833, 16 L. R. A. [N. S.] 483, 126 Am. St. Rep. 400); *Skinner* v. *Oakes,* 10 Mo. App. 45; *Jacoway* v. *Young,* 143 C. C. A. 152 (228 Fed. 630); *Falk* v. *American West Indies Trading Co.,* 180 N. Y. 445 (73 N. E. 239, 1 L. R. A. [N. S.] 704, 105 Am. St. Rep. 778, 2 Ann. Cas. 216); 38 Cyc. p. 867; *Smith* v. *Yost,* 72 Ind. App. 628 (125 N. E. 72).

"Because of these peculiar qualities which inhere in trade marks and trade names as property, it has been held by the courts, with great uniformity, and perhaps may now be said to be the general rule, that, in a voluntary sale of a business as an entirety, trade marks and trade names which have been lawfully established and identified with such business will pass to one who purchases as à whole the physical assets or elements of the business, éven though not specifically mentioned in the conveyance. *Wilmer* v. *Thomas,* 74 Md. 485 (22 Atl. 403, 13 L. R. A. 380); *Solis Cigar Co.* v. *Pozo,* 16 Col. 388 (26 Pac. 556, 25 Am. St. Rep. 279); *Laughman's Appeals,* 128 Pa. 1 (18 Atl. 415, 5 L. R. A. 599); *Morgan* v. *Rogers,* 19 Fed. 596; *Kronthal Waters* v. *Beckham,* 137 Fed. 649; *Hering-Hall-Marvin Safe Co.* v. *Hall's Safe Co.,* 208 U. S. 554 (28 Sup. Ct. 350, 52 L. Ed. 616); *Snyder Manfg. Co.* v. *Snyder,* 54 Ohio St. 86 (43 N. E. 325, 31 L. R. A. 657); *Williams* v. *Farrand,* 88 Mich. 473 (14 L. R. A. 161); *Merry* v. *Hoopes,* 111

N. Y. 415 (18 N. E. 714); *Feder* v. *Benkert,* 18 C. C. A. 549 (70 Fed. 613); *Allegretti* v. *Allegretti Chocolate Cream Co.,* 177 Ill. 129 (52 N. E. 487); *Corbett Bros. Co.* v. *Reinhardt-Meding Co.,* 77 N. J. Eq. 7 (76 Atl. 243); *Macwilliam* v. *President Suspender Co.,* 46 App. D. C. 45, 49 (242 Off. Gaz. 255)."

Trade names and trade marks lawfully identified with the business of an insolvent pass to the receiver appointed by the court and thence to one who purchases the business substantially as a whole. The trade name attached to the business but it could not be sold by the receiver as an asset wholly apart from business assets.

We held in *Detroit Creamery Co.* v. *Velvet Brand Ice Cream Co.,* 187 Mich. 312, 315, relative to trade marks that:

"It is the well-established law of trade marks that a trade mark does not exist as an extrinsic thing, and therefor it is not in any sense property when so considered. Its existence as property and its value as such is created only when it has become associated with and is a part of the business with which it has been connected."

The good will of the defunct corporation did not survive its dissolution. See *Grand Rapids Trust Co.* v. *Haney School Furniture Co.,* 221 Mich. 487 (27 A. L. R. 1020).

My Brother evidently entertains the view that the trade name follows ownership of the patents. I have endeavored to point out that such is not the case where manufacture under the patents is dead and, by sale and court confirmation, the assets of the dissolved corporation have been divided and sold in 42 parcels and thus the former trade name is a homeless waif. A patent may be sold and, of course, carry rights to operate thereunder, but such a sale as here involved does not carry the exclusive right

to-the former trade name. The purchaser of the patents did not acquire any of the business equipment of the defunct corporation. The trade name was, though registered, a mere designation by its author and a thing wholly apart from the patents and it cannot be carried in suspense until another business, if any, is established by the purchaser of the property and provides a setting for it.

Under the record in this case Mr. Lewis acquired no exclusive right to the trade name and trade marks of the corporation and the decree granting him exclusive right to the use of the same should be reversed, with costs.

CHANDLER, STARR, and BUSHNELL, JJ., concurred with WIEST, J.